695 P.2d 480

STATE of New Mexico, ex rel. S.E. REYNOLDS, State Engineer, and Pecos Valley Artesian Conservancy District, Plaintiffs-Appellees,

v.

Forrest NICCUM and Rose Ranch, Inc., d/b/a Hondo Ranch, Defendants-Appellants.

No. 14810.

Supreme Court of New Mexico.

Feb. 18, 1985.

Burroughs & Rhodes, Jefferson R. Rhodes, Alamogordo, for defendants-appellants.

Dan Sanchez, Sp. Asst. Atty. Gen., Santa Fe, for State Engineer.

John F. Russell, Roswell, for Pecos Valley Artesian Conservancy Dist.

## OPINION

SOSA, Senior Justice.

The State of New Mexico brought suit in Chaves County to adjudicate water rights in the Rio Hondo, Rio Ruidoso and Rio Bonito stream systems, all tributaries of the Pecos River in the Pecos Valley Artesian Basin. Twice the matter was referred by the court to special masters and hearings were held in 1976 and 1981. Both special masters, after hearing relevant evidence, came to similar conclusions supporting the State Engineer's allocation of water to defendants Forrest Niccum (Niccum) and the Hondo Ranch. The trial court upheld the findings and conclusions of the special masters. We affirm.

The key issue is whether or not there is substantial evidence to support the findings of the special masters that the formula to determine "water duty" was correctly applied to the Niccum property. The threshold question is whether the formula used by the State Engineer was correctly applied to the stream users. Niccum maintains that if the formula was not correctly applied, then the result is an unconstitutional taking of his property rights without just compensation.

The State Engineer, to determine the correct water duty, prepared a hydrographic survey which grouped users according to the source of their water rights. Using a nationally recognized and proven formula, the State Engineer allotted water duty along each stream. The formula was developed to determine "consumptive use" water by irrigated crops. *See Determining Water Requirements For Settling Water Disputes*, 4 N.R.J. 29 (1964). The formula uses a procedure to estimate water requirements and may be used to:

> transpose observed consumptive use data from one area to other areas for which only climatological data are available. The amount of water supplied from natural sources is subtracted from the computed total consumptive use, giving the net consumptive irrigation water requirement that must be met for optimum crop production. This net requirement, divided by the irrigation efficiency, gives the irrigation water requirement of the crop.

*Id.* at 31. The numbers used in the formula were based on the *average needs of the group of users along each stream*, not on the needs of one particular stream user.

After reviewing the formula, the methodology used, and after receiving evidence concerning climate and soil variations, both special masters found that the *averaging* of water duties of user's along a particular source stream was an appropriate and rea-

sonable procedure for determining Niccum's water duty.

Niccum does not quarrel with the State Engineer's choice of formula. Additionally, he agrees that the application of a uniform average duty along a particular source stream is appropriate *if* climatological and other crucial data is similar along the stream. Niccum argues that it is essential to the proper use of the formula that the group being averaged is *homogeneous*. He asserts that the group selected by the State Engineer has wide variations as to elevation, rainfall, natural vegetation, cropping patterns, slope and soil measurements. His position is that the lack of homogeneity of the group makes the formula inoperative and unfair to the downstream users. He maintains that the downstream land, where his Hondo Ranch is located, is more arid and the field irrigation is less efficient, thus, he contends his ranch requires more water than the upstream ranches that receive heavier rainfall and have better soil.

Niccum purports that the correct use of the formula in the instant case would be on a site by site basis. He argues that the methodology used in applying the formula here destroys the scientific accuracy of the formula, because the averaging of the needs of the stream users was done without consideration for the differences in elevation and rainfall. The special masters made findings that a site by site application of the formula would be too costly, inefficient and would require seasonal re-evaluation.

Next Niccum argues that constitutionally, "beneficial use" is the basis of water rights in New Mexico. N.M.Const. art. XVI, § 3. He claims that if the beneficial use is lessened by an incorrect application of a formula, the result is an unconstitutional taking without compensation of his property right to 127 acre feet of water. This water would subsequently revert to public use.

The court accepted and adopted the reports submitted by each of the special masters. These reports approved the State Engineer's use of this particular formula for allocating water duty, and accepted the methodology of grouping of stream source users.

▮▮ Special masters are to be appointed by the court when issues are complicated. NMSA 1978, Civ.P.R. 53(b) (Repl. Pamp.1980). When there is no jury, "the court shall accept the master's findings of fact unless clearly erroneous." Civ.P.R. 53(e)(2) (Repl.Pamp.1980). Only when there is total lack of substantial evidence to support the special master's findings, is the court warranted in rejecting the master's report. *Lopez v. Singh,* 53 N.M. 245, 205 P.2d 492 (1949). When there is substantial evidence the special master's findings are binding upon the trial court. *Id.* We have defined substantial evidence as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" *Toltec International, Inc. v. Village of Ruidoso,* 95 N.M. 82, 84, 619 P.2d 186, 188 (1980). The special master's findings are presumed to be correct and when there is any testimony consistent with the findings, they must be treated as unassailable. *Witt v. Skelly Oil Co.,* 71 N.M. 411, 379 P.2d 61 (1963).

▮▮ Previously we have given deference to those administrative agencies having special knowledge and experience in a field. *Groendyke Transport, Inc. v. New Mexico State Corp. Comm.,* 101 N.M. 470, 684 P.2d 1135 (1984); *see also Stokes v. Morgan,* 101 N.M. 195, 680 P.2d 335 (1984). Special masters who take the testimony, examine the evidence, observe and question witnesses receive this similar deference. *See Lopez v. Singh.*

▮▮ Here the trial court had two special masters' reports that were essentially in agreement on the correctness of the formula and the methodology used. Niccum convinced neither the special masters nor the trial court that the formula was used inappropriately. Once findings of a special master are adopted and approved by the trial court, this court will not disturb those findings when they are supported by

substantial evidence. *State ex rel. Reynolds v. Lewis*, 74 N.M. 442, 394 P.2d 593 (1964). An appeals court cannot reweigh the evidence based on contrary evidence which could support a finding other than that of the special master. *Id.; see also Toltec International, Inc.* There is nothing in the record that convinces us to disregard the findings and conclusions of the two special masters and the trial court.

We affirm the trial court.

IT IS SO ORDERED.

RIORDAN and STOWERS, JJ., concur.