ALFRED BROWN, as Committee for AMELIA BROWN, Claimant, v STATE OF NEW YORK, Defendant. (Claim No. 67303.)

Court of Claims, December 7, 1988

### APPEARANCES OF COUNSEL

*Julian & Pertz, P. C. (Robert Julian* of counsel), for claimant. *Robert Abrams, Attorney-General (John E. McComb* of counsel), for defendant.

### OPINION OF THE COURT

EDWIN MARGOLIS, J.

This action for personal injuries was commenced in 1983 by a claim alleging that the physicians and staff of the Mohawk Valley Psychiatric Center, Utica Campus, improperly diagnosed the condition of Amelia Brown, a patient at the hospital, and improperly permitted her to have ground privileges,

thereby facilitating her escape from the facility and injury to herself in a suicide attempt. Trial of the action was commenced on May 2, 1988 but, prior to completion of claimant's proof, the parties agreed to settle the matter. The instant motion, made pursuant to CPLR 1207, seeks this court's approval of the settlement.

Subsequent to the agreement to settle, Alfred Brown, who had initiated and prosecuted the action as guardian ad litem of his daughter Amelia, was appointed as committee for Amelia Brown (Sup Ct, Oneida County, June 27, 1988, Terry, J., index No. 344D) and granted permission to apply for settlement and compromise of this action (Sup Ct, Oneida County, Sept. 19, 1988, Terry, J., index No. 344D). In addition, Alfred Brown, as committee for Amelia Brown, was substituted for Alfred Brown, as guardian ad litem, as claimant in this action (Ct Cl, Sept. 23, 1988) in order for payment of the moneys to be properly made.

By the instant motion, claimant seeks this court's permission to settle the action for the sum of $50,000 and an order directing payment of this sum as follows: $43,572.69 to Julian & Pertz, P. C. for reimbursement of expenses incurred and accrued in prosecution of this matter and $6,427.31 to claimant, for the sole use and benefit of Amelia Brown, in a structured settlement. With the exceptions noted below, the submissions to the court are in substantial compliance with the requirements of CPLR 1207.

Although the moving papers continually refer to the settlement as being in the amount of $50,000 only, an even more important aspect of the settlement were the agreements of the State and of Oneida County Department of Social Services to withdraw, as against the sum to be paid in settlement, liens totaling $222,810.11 (State liens of $208,159.37 and $5,830.35 and a county lien of $8,820.39). As the amounts of these liens far exceed the amount to be paid out in settlement, copies of the written releases must be a part of the documents submitted on this motion.

In view of the seriousness and undisputed permanency of Amelia Brown's injuries, the amount of the settlement appears at first impression to be inadequate compensation. However, there are two factors which alter this initial perception. First, because of the outstanding liens, if the matter had proceeded through trial, the court would have had to award a judgment for claimant in excess of $273,000, in order for there

to be the same sum ($50,000) to share between Ms. Brown and her attorneys. In fact the necessary recovery would have to be somewhat greater since the attorney's disbursements would have been greater if the trial had continued. Second, and even more important, a judgment in claimant's favor was not the certain result of this action at the time the trial was stopped.

There was a factual issue as to whether Ms. Brown's injurious action (jumping from an apartment house window) had been a suicide attempt implicating the State's decision to allow her ground privileges or merely an accident. More significantly, even if a suicide attempt were proven, claimant had the burden of proving that the State departed from the applicable standard of care in allowing this patient to have ground privileges, because a decision to permit such privileges undoubtedly has therapeutic value as well as creating a certain degree of risk. These factors could conceivably have led to a finding of no liability on the part of the State, although the amount of recovery would have been significant if liability were found. In light of the above, the court accepts the settlement figure and conditions as reasonable and as in the best interest of the incompetent claimant. *(See generally, Perone v Nicklas,* 99 AD2d 484, 486.)

In its review of the proposed settlement, the court is also obliged to assess the requested distribution of the proceeds between claimant, on behalf of Amelia Brown, and claimant's attorneys. CPLR 1208 effectively requires that the court, when approving the settlement of an incompetent's action, also approve the terms of the proposed distribution,[1] and CPLR 1206, which governs the disposition of the proceeds of an infant's or incompetent's claim, provides that only those expenses allowed by the court may be deducted. In addition, section 202.67 of the Uniform Civil Rules for the Supreme Court and County Court[2] (22 NYCRR) sets out criteria for the amounts to be allowed. Subdivision (a) of that section lists certain categories of disbursements that are to be deducted from the settlement amount and requires court approval for the deduction of any other disbursements. This rule also sets a

---

1. The statute requires that an infant's or incompetent's representative state "the terms and proposed distribution of the settlement and his approval of both" in the submissions to be presented for the court's approval. (CPLR 1208 [a] [5].)

2. There is no comparable rule in the Uniform Rules for the Court of Claims (22 NYCRR part 206) and, in the absence of such, practice in this court is the same as in Supreme Court. (Court of Claims Act § 9 [9].)

limit (one third of the amount remaining after deduction of the disbursements) on the fee which may be paid to the attorney.

In general, in cases where the client is neither an infant nor an incompetent, an attorney is entitled to the fee on which he and his client have agreed. (Judiciary Law § 474; *but see, Wade v Clemmons,* 84 Misc 2d 822.) And, in all cases, an attorney is also commonly entitled to reimbursement of "such reasonable expenditures as the diligent prosecution or defense of a lawsuit may require" but not to reimbursement of expenses that are a normal part of a lawyer's work or the operation of his office *(Rao v Noferi,* 50 Misc 2d 60, 61; *see also, Matter of Muccini,* 118 Misc 2d 38, 44).

The former practice of making attorney fee awards in infants' actions inclusive of disbursements has been abandoned *(Werner v Levine,* 52 Misc 2d 653, 655), but the court nevertheless has a statutory mandate and special responsibility to assess the reasonableness and necessity of disbursements in cases involving infants and incompetents. In a similar situation, another Judge of this court disallowed reimbursement of $187.50 paid by an attorney to a private investigator for services in "preparation and trial" of an infant's action. Holding that these services were not justified by any unusual complexity of the case or other special circumstances, Judge Weisberg stated, "[T]his is an infant's claim and the court is, therefore, duty bound to examine with the utmost care the expenditure of any sums which would constitute a deduction from the award to determine whether or not they were reasonable and necessary to the conduct of the litigation." *(Levy v State of New York,* 100 Misc 2d 781, 782-783.)

In the instant application, the proposed distribution contains no proposal for payment of attorney fees, and claimant's attorney confirms that he is waiving his fee. This waiver is commendable, in view of the relatively small portion of the recovery that would accrue for the benefit of Ms. Brown under the proposed distribution. However, the absence of any claim for attorney fees does not negate the court's responsibility to assess the reasonableness of the disbursements made on her behalf. These disbursements total $43,572.69 and constitute approximately 87% of the settlement proceeds.

A review of the individual items for which disbursement deductions are claimed reveals that a number of the items (including postage, telephone, research, typing, enlargements

of photographs, and travel expenses for experts) are those for which court approval is required under 22 NYCRR 202.67 (a) (7); however, we are provided with no authority or special justification for approving these expenses. With respect to these expenses, the application should advise the court why these should not be considered a traditional part of the operating costs of a law firm or otherwise provide authority for their inclusion as reimbursable disbursements.

More importantly, and despite the fact that section 202.67 (a) (6) expressly authorizes the deduction of expert fees, the court also requires a more detailed explanation of the seemingly large amount paid out as fees for medical and other experts.[3] The size of these fees range from $315.50 to $10,785 and the number of experts consulted is quite large (9 medical experts and 4 nonmedical); the total amount paid to experts was $32,904.50. Only one of claimant's experts, an ophthalmologist, had testified, as to Ms. Brown's physical injuries, at the time that trial ended, and thus we cannot know the value or necessity of the other consultations.

As noted above, the most critical part of claimant's case was establishing the relevant standard of care in order to prove the State's liability for Ms. Brown's injuries, and it was the court's impression, from several side-Bar conferences, that concern about this aspect of the case is what caused claimant's attorney (who was clearly anticipating a recovery much larger than the full settlement amount) to become serious about settlement. It is important to note that the case was settled prior to the submission of any part of defendant's case. This leads to the inescapable conclusion that claimant's counsel settled the case for an amount far less than the anticipated recovery not because of the strength of defendant's showing but because of a perceived or at least potential weakness in claimant's own case as the critical issues were clarified.

It is difficult for the court to understand why any weakness of this nature had not been anticipated by counsel before such substantial sums were expended in fees to experts. We are also concerned with the apparent repetitiveness of many of the medical consultations. Their retention may have been a reasonable decision but the court is in no position to deter-

---

**3.** None of these payments were for treatment of Ms. Brown, as she was being treated in a State facility. We can only conclude that all the experts were consulted solely for the purposes of this litigation.

mine that, as information about the specialties of the various experts and their planned role in the litigation is entirely missing from the present submissions.

If the level of expenditure was improvident, we are not convinced that it is the incompetent who should bear the burden of such error in judgment. Accordingly, counsel for claimant is directed to supplement the motion papers with the following:

1. releases of the liens which the State of New York and the Oneida County Department of Social Services have agreed to waive as against the proceeds of this settlement;

2. a list of the disbursements which fall in the categories listed in subdivision (a) (1) through (5) of 22 NYCRR 202.67;

3. a more detailed list of disbursements for experts' fees (22 NYCRR 202.67 [a] [6]) which should indicate:

(1) the name and specialty of the expert;

(2) nature of the services rendered and date provided;

(3) hourly or other fee and amount paid;

(4) a brief description of the need for such expert; and

4. a list of all other disbursements (22 NYCRR 202.67 [a] [7]), together with reasons why the court should permit these items to be deducted as disbursements.

In lieu of items 2, 3, and 4 above, claimant and claimant's counsel may submit a modified request for distribution of the settlement amount for approval.