920 P.2d 1057

**Yolanda LOZANO, et al., Plaintiffs,**

**Debbie (Cordova) Gonzales and Sylvia Sena, Plaintiffs–Appellants,**

**v.**

**GTE LENKURT, INC., Employer, Defendant–Appellee,**

**and**

**American Motorists Insurance Co., Insurer, Defendant.**

No. 15803.

Court of Appeals of New Mexico.

June 20, 1996.

Joseph Goldberg, John W. Boyd, Gary W. Nelson, Freedman, Boyd, Daniels, Peifer, Hollander, Guttmann & Goldberg, P.A., Albuquerque, for Appellants.

Carlos G. Martinez, Emily A. Franke, Butt, Thornton & Baeher, P.C., Albuquerque, for Appellee.

*OPINION*

FLORES, Judge.

1. Plaintiffs–Appellants Debbie Gonzales and Sylvia Sena (Appellants) appeal the district court's adoption of a special master's report which recommends the disbursement of a $2 million third-party settlement among 225 plaintiffs, their attorneys, and their workers' compensation carrier. Appellants raise five issues on appeal: (1) whether the district court erred in adopting the special master's report; (2) whether the district court erred in failing to order an accounting of expenditures from two trust accounts administered by their attorneys before it adopted the special master's report and entered a judgment allocating the proposed Dow Chemical Company (Dow) settlement; (3) whether the district court's allocation of the Dow settlement among the plaintiffs was arbitrary and capricious; (4) whether the district court erred in allocating additional reimbursement to GTE Lenkurt, Inc. (GTE); and (5) whether the district court erred in awarding $800,000 in attorney fees from the Dow settlement.

2. GTE contests all but the last issue and raises as an additional issue whether this appeal should be dismissed because Appellants have failed to join necessary and indispensable parties. We reverse on the "accounting" issue and remand with instructions for the district court to order an accounting of disbursements from the GTE medical trust fund and from the Shell/DuPont settlement fund and to determine, based on that accounting, whether to award or withhold attorney fees. We affirm the judgment of the district court as to all other issues.

*FACTS*

3. Appellants Sylvia Sena and Debbie Gonzales were employees of GTE from 1974 to 1985 and from 1976 to 1982, respectively. They were 2 of 123 workers on whose behalf attorney Josephine Rohr filed individual occupational disease and disablement (ODD) claims in the mid–1980s. In 1985, all the

claims against GTE arising from exposure to toxic chemicals were consolidated. During the course of the ODD cases, Ms. Rohr associated with other attorneys, including the Maloney Law Firm from San Antonio, Texas. In 1987, 115 of the original plaintiffs settled their claims for a lump-sum payment of $2.5 million.

4. The $2.5 million settlement was distributed in the following manner: (1) $1.2 million was paid to the workers in compensation benefits; (2) GTE placed $800,000 in a medical trust fund for payment of past and future medical expenses of the workers, to be administered by Ms. Rohr; and (3) $500,000 was paid in attorney fees and costs.

5. In September 1987 the 115 workers in the ODD cases were joined by an additional 110 employees of GTE and, together they filed a third-party products liability action against the chemical companies that manufactured the chemicals used in the GTE plant. These companies included DuPont Chemical Company (DuPont), Shell Chemical Company (Shell), Dow, and other chemical manufacturers. Ms. Rohr and her associates represented all the plaintiffs.

6. In 1990 DuPont settled with the plaintiffs for $1.5 million and Shell settled with the plaintiffs for $3 million. The settlement monies were distributed as follows: (1) $410,-000 was paid to GTE in accordance with GTE's reimbursement right; (2) $1,192,500 was distributed to the plaintiffs at the rate of $5,300 per worker; (3) $1.8 million or forty percent of the settlement as specified in the contingency agreement between the plaintiffs and their attorneys, was allocated as attorney fees; and (4) $1,097,500 was paid to the Maloney Law Firm as reimbursement for costs advanced during the course of litigation. One million dollars of the attorney fees was placed in an escrow account to be used in litigation against Dow. The plaintiffs also contributed part of their payments from the Shell/DuPont settlement to fund the Dow litigation.

7. In January and February of 1992 a test case including thirteen of the plaintiffs in the third-party action against Dow was tried to a jury and a verdict was returned in favor of Dow. Subsequently, Dow settled with all the plaintiffs for $2 million.

8. The plaintiffs, GTE, and the attorneys could not agree on a distribution plan for the settlement monies. Therefore, Judge Frank Zinn was appointed as neutral mediator and special master in accordance with SCRA 1986, LR2–602 (Repl.1994) and SCRA 1986, 1–053 (Repl.1992). Two settlement conferences and a one-day hearing were held. On December 17, 1993, the special master made the following recommendations for distribution of the $2 million Dow settlement: (1) $300,000 to GTE as reimbursement for the monies paid to settle claims in the ODD action, which amount was to come out of the monies disbursed to the 115 workers who participated in the ODD action; (2) $900,000 to be disbursed to the plaintiffs according to years worked, weighted so no plaintiff would receive less than $500; each plaintiff would receive $785.34 for each year worked; the 115 workers that participated in the ODD action would have their share proportionately reduced to reimburse GTE; and (3) $800,000 to be awarded to the plaintiffs' attorneys in the third-party action. Also, it appears that $500 was paid to each of fifty children of the plaintiffs (to be matched by Dow).

9. On June 29, 1994, after a two-day hearing on objections to the special master's report, the district court entered a judgment adopting the report and ordering the $2 million settlement to be distributed pursuant to the recommendation of the special master.

*DISCUSSION*

I. Nonjoinder of Other Interested Persons Not Fatal to Appeal

■ 10. Initially, we address GTE's argument that this appeal should be dismissed. More specifically, GTE urges this Court to dismiss this appeal because Appellants did not join the 223 other plaintiffs and their attorneys. In support of its position, GTE relies on authority that applies Federal Rule of Civil Procedure 19 or its state law equivalent. However, Federal Rule 19 as well as our state rule, *see* SCRA 1986, 1–001, –019 (Repl.1992), address mandatory joinder of parties in causes of action at the trial level and do not apply to cases on appeal.

11. Our Rules of Appellate Procedure require service of the notice of appeal on "trial counsel of record for each party other than the appellant." SCRA 1986, 12–202(D)(3) (Cum.Supp.1995). Appellants complied with this rule. Also, interested parties may join an appeal, but our rules do not require the present appeal to be dismissed because the attorneys and other plaintiffs were not joined. *See* SCRA 1986, 12–202(F)(1). Neither is there any statutory support for GTE's argument. NMSA 1978, Section 39–3–16 (Repl.Pamp.1991), states that "[i]f there are several parties entitled to ... take an appeal and any of them have separate interests in the judgment ... it is not necessary to join these parties in the ... appeal."

12. After a party or other interested person has been notified of an appeal, the decision whether to join in the appeal is left to them. *See, e.g., State ex rel. Sweet v. Village of Jemez Springs, Inc. City Council,* 114 N.M. 297, 303, 837 P.2d 1380, 1386 (Ct. App.1992) (a non-joined party "entitled to no more than a fair opportunity to intervene") (Hartz, J., concurring); *Golembieski v. O'Rielly R.V. Ctr., Inc.,* 147 Ariz. 134, 136, 708 P.2d 1325, 1327 (Ariz.Ct.App.1985) (focus in joinder inquiry should be on whether all parties to the litigation who would be directly affected by an appeal have been given adequate notice of the appeal so they can join in if they choose); *Copeman v. Takken,* 262 Mich. 674, 247 N.W. 778, 779 (1933) (one party may appeal for his or her own benefit without other parties joining the appeal).

13. In the present case, Appellants provided the other parties adequate notice of an appeal and an opportunity to join in the appeal. Although the notice of appeal misstated the date of the judgment, such a technical error is not fatal. Technical defects should be overlooked where the intent to appeal from a specific order or judgment can be fairly inferred from the notice of appeal. *Mabrey v. Mobil Oil Corp.,* 84 N.M. 272, 274, 502 P.2d 297, 299 (Ct.App.), *cert. denied,* 83 N.M. 740, 497 P.2d 742 (1972). Here, a copy of the district court's judgment was attached to the notice, so there could be no mistake as to which judgment was the subject of this appeal. Appellants' obligation to other parties or interested persons has been met. Therefore, we reject GTE's argument that Appellants' appeal should be dismissed.

### II. District Court's Adoption of the Special Master's Report

14. Appellants contend that the district court improperly delegated its judicial responsibilities to the special master by "rubber-stamping" the special master's report rather than engaging in a substantive review of the recommendations.

15. Although it is well-settled that a special master may not displace the court, *see* 9A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 2601 (1995), an order or judgment by a district court adopting a special master's report will be upheld on appeal if the special master's findings are supported by substantial evidence. *State ex rel. Reynolds v. Niccum,* 102 N.M. 330, 332–33, 695 P.2d 480, 482–83 (1985).

16. The standard of review a district court applies to the adoption of a special master's report differs depending on whether the district court is reviewing the special master's findings of fact or conclusions of law. Under SCRA 1–053(E)(2), the district court must accept the special master's findings of fact unless they are clearly erroneous. In the present case, the district court held a two-day hearing on objections to the special master's report. Failing to find the special master's findings of fact clearly erroneous, Judge Ashby correctly accepted them.

17. The standard of review a district court should apply when considering the adoption of a special master's conclusions of law is not as clear. SCRA 1–053(E)(2) does not specify the appropriate standard of review but allows the court to "adopt the report or ... modify it or ... reject it in whole or in part or ... receive further evidence or ... recommit it with instructions." New Mexico cases that address a district court's treatment of a special master's report also fail to clearly delineate the appropriate standard of review that should influence the adoption of conclusions of law. *See, e.g., In*

re Castellano, 119 N.M. 140, 141–42, 889 P.2d 175, 176–77 (1995) (per curiam); *Claridge v. New Mexico State Racing Comm'n,* 107 N.M. 632, 635–36, 763 P.2d 66, 69–70 (Ct. App.), *cert. denied,* 107 N.M. 413, 759 P.2d 200 (1988); *Dorbin v. Dorbin,* 105 N.M. 263, 264, 731 P.2d 959, 960 (Ct.App.1986).

■ 18. Federal law is more clear on the question of what weight must be given to the special master's conclusions of law. Under federal law, a special master's conclusions of law carry no weight with the district court; rather, the court reviews a special master's conclusions of law de novo. *Gottlieb v. Barry,* 43 F.3d 474, 486 (10th Cir.1994); *Stauble v. Warrob, Inc.,* 977 F.2d 690, 697 (1st Cir. 1992). We believe that the interpretation and construction that federal courts give Federal Rule of Civil Procedure 53(e)(2), as it relates to the special master's conclusions of law, is persuasive authority for New Mexico courts applying SCRA 1–053(E)(2). *See Lopez v. Singh,* 53 N.M. 245, 247, 205 P.2d 492, 493 (1949) (applying previous rule). Thus, we look to the factors that the First Circuit considered in *Stauble,* to determine whether in the instant case the district judge adequately reviewed the special master's conclusions of law.

■ 19. In *Stauble,* the district court's adoption of a special master's report was reversed because the district judge failed to review the conclusions of law de novo. The appellate court was concerned that the district court had adopted the report without a hearing, without a stated analysis, and without any discussion of the special master's legal conclusions. *Stauble,* 977 F.2d at 697. Although the defendants objected in detail to the report, the district judge did not comment on the objections. *Id.* In the present case, the district judge held a two-day hearing on objections to the report. He issued his findings of fact and conclusions of law in detail, relating them to the special master's report. He issued a letter decision in which he commented on the analysis he undertook in reaching his decision. Exhibits, memoranda, and briefs were submitted to the district court for review. We determine that, applying the *Stauble* factors, the district court adequately reviewed the special master's

conclusions of law and did not err in adopting the special master's report as to the allocation of the Dow settlement monies among the claimants and the reimbursement to GTE. However, we conclude that the district court erred by awarding additional attorney fees to Appellants' trial counsel without first ordering a full accounting of expenditures from the GTE medical trust fund and the litigation fund established with the Shell/DuPont settlement monies.

### III. Accounting and Attorney Fees

### A. Appellants' Demand for an Accounting

20. To substantiate their objection to the award of attorney fees, Appellants demanded an accounting. Appellants' demand for an accounting is based on allegations that their attorneys misappropriated funds from the GTE medical trust fund and from the Shell/DuPont settlement that was earmarked as a litigation fund for the Dow case. Appellants contend that their attorneys were not entitled to any more fees because of their misuse and misappropriation of funds from the earlier settlements.

■ 21. The issue of an additional accounting was not included in the special master's report for the district court's review. Therefore, the standard of review that applies to the adoption of a special master's report does not apply; we review the district court's decision to proceed without ordering an additional accounting for an abuse of discretion. *See Hartman v. Elias,* 41 N.M. 392, 393, 69 P.2d 929, 930 (1937). An abuse of discretion will be found when the district court's decision is contrary to logic and reason or upon a showing of "manifest error in the trial court's exercise of [its] discretion." *Sundance Mechanical & Util. Corp. v. Atlas,* 109 N.M. 683, 691, 789 P.2d 1250, 1258 (1990).

■ 22. Appellants have a right to a full accounting of the GTE medical trust fund and the Shell/DuPont settlement monies. *See* SCRA 1986, 16–115(B) (Repl.1995) (upon request of a client, attorney must promptly render full accounting regarding funds in which client has an interest); *see also Koppel v. Wien, Lane & Malkin,* 125 A.D.2d 230, 509

N.Y.S.2d 327, 330 (App.Div.1986) (a fiduciary relationship creates an absolute right to an accounting); 7A C.J.S. *Attorney & Client* § 247 (1980) (attorney has absolute duty to give a full, detailed and accurate accounting). According to the evidence presented at trial, Appellants have not received the accounting to which they are entitled. In fact, their trial attorneys deny any obligation to provide an accounting of the Shell/DuPont settlement monies, arguing that the Dow litigation account was funded by the donation of their attorney fees and that Appellants had no interest in those funds. However, that claim is contrary to the special master's finding that Appellants contributed part of their payments from the Shell/DuPont settlement to fund the litigation against Dow.

23. The district court erred by concluding that the demand for an accounting was outside the scope of the proceedings. The Order of Reference appointing the settlement facilitator stated that the court had jurisdiction over "the claims for attorneys' fees and costs of the attorneys and the amount of recovery of the [Appellants] from any trust funds remaining in the hands of [Appellants'] counsel." Under the court's jurisdiction, the special master had authority to order an accounting to help evaluate the propriety of awarding additional attorney fees, and in fact did order an audit report of the GTE and Shell/DuPont settlements. A significant portion of the hearing on objections to the special master's report was devoted to testimony concerning the inadequacies of that audit report. The district court questioned John Howard, an expert in the field of accounting, as to how long a full accounting would take and the cost of such an accounting. Thus, the district court's own order and conduct put an accounting squarely within the scope of the proceedings.

24. Although an audit report was submitted in response to the special master's order, the district court did not find that the report amounted to an accounting. To the contrary, the court acknowledged that "if the claims were made against the claimants' attorneys, an accounting might be appropriate." In rejecting Appellants' demand for an accounting, the court commented that the time had

come to "get on to other matters," apparently concluding that the additional month John Howard estimated an accounting would take was excessive. After ten years of litigation and amid allegations of gross misconduct, the district court's award of an additional $800,000 in attorney fees in the absence of an accounting is contrary to logic and reason and thus an abuse of discretion.

25. Therefore, we reverse on this issue and remand with instructions for the district court to order a full, detailed, and accurate accounting of expenditures from the GTE medical trust fund and the litigation fund established with the Shell/DuPont settlement monies, with the costs of the accounting to be charged to Appellants' trial attorneys.

## B. Attorney Fees

26. Appellants contend that their attorneys should not have received the full amount of their contractually agreed upon fee. They argue that the award is inequitable because the attorneys received a disproportionate share of the four settlements in fees and costs, and because the award was made without regard to Appellants' allegations of misconduct and misappropriation of client funds. We agree that the district court erred by awarding the full contract amount without regard to Appellants' allegations of misconduct.

27. Generally, courts should enforce contingency fee contracts as made. *Citizens Bank v. C & H Constr. & Paving Co.*, 93 N.M. 422, 427, 600 P.2d 1212, 1217 (Ct.App.1979). However, in this case, whether Appellants' attorneys are entitled to additional fees is inexorably tied to the accounting we have ordered. Appellants contend that tens of thousands of dollars in client funds are either unaccounted for or were converted by their attorneys for their own use. These allegations are apparently not unfounded, as the district court acknowledged having "reservations over the way these expenses and trust account monies were handled." If the attorneys did misappropriate Appellants' funds, the amount of the fees owing to them under their contract should be reduced by the total of misappropriated funds. Therefore, we remand with

instructions for the district court to reconsider whether the attorneys are entitled to additional fees on the basis of the accounting. If the accounting exposes no misconduct, the district court's award of $800,000 in fees will stand. If the accounting reveals the attorneys converted client funds to their own uses or otherwise misappropriated client funds, the award must be set aside and reduced commensurate with the results of the accounting.

28. We conditionally affirm the fee award if the accounting reveals no misconduct which would diminish the attorneys' right to receive additional fees. "[A]n attorney is entitled to the fee on which he and his client have agreed." *Brown v. State,* 142 Misc.2d 129, 536 N.Y.S.2d 652, 654 (Ct.Cl.1988); *see also Citizens Bank,* 93 N.M. at 427–29, 600 P.2d at 1217–19 (contingency agreement not subject to alteration or amendment by court; court's function is to enforce the contract as made). In the present case, Appellants and their attorneys agreed that the attorneys would receive fifty percent of any recovery after trial and forty percent of the recovery without litigation. Arguably, the attorneys were entitled to fifty percent of the Dow settlement because of the unsuccessful test trial; nevertheless, the special master recommended that they be awarded forty percent of the Dow settlement and the attorneys do not contest that award. We find that, absent a showing of attorney misconduct, the award is based on a valid contingency agreement and that the amount is not unreasonable.

■ 29. Appellants argue that, because GTE does not contest the claim that attorney fees should not have been awarded from the Dow settlement, we should accept Appellants' assertions as true and find in their favor. We disagree.

30. Our Rules of Appellate Procedure do not require an answer brief to be filed; instead, where no brief is filed, the cause may be submitted upon the brief of the appellant. SCRA 1986, 12–312(B) (Repl.1992). We do not read SCRA 12–312(B) as requiring that we reverse when no brief is filed. *See Cobb v. Otero County Assessor,* 100 N.M. 207, 210, 668 P.2d 323, 326 (Ct.App.1983) (affirming decision where no answer brief filed). This rule applies equally when an answer brief has been filed but a particular issue is not addressed. *See* 4 C.J.S. *Appeal & Error* § 612 (1993) (answer brief need not specifically answer each assignment of error made by appellant; judgment may be affirmed on any legal ground shown by the record, whether or not it is briefed). Thus, GTE's failure to contest the award of attorney fees does not preclude the consideration of this issue on its merits.

IV. Reimbursement to GTE From the Dow Settlement

■ 31. Appellants urge this Court to reverse the district court's allocation of $300,000 to GTE in satisfaction of its right to reimbursement for compensation and other benefits paid, arguing that, "where there has been no double recovery ... the employer does not have an automatic right to reimbursement." We are unpersuaded by this argument for two reasons. First, GTE's reimbursement right was not granted automatically but was the result of a contractual agreement negotiated with Appellants' counsel. Second, this Court's recent opinion, *Gutierrez v. City of Albuquerque,* 121 N.M. 172, 909 P.2d 732 (Ct.App.), *cert. granted,* 120 N.M. 828, 907 P.2d 1009 (1995), does not support Appellants' claim that the absence of a double recovery controls GTE's reimbursement right.

32. At oral argument, counsel cited *Gutierrez* as support for Appellants' contention that the reimbursement to GTE is unfair even though Appellants do not challenge the fairness of the Dow settlement amount. Appellants argue that, because the settlement was not enough to go around, the court should have equitably allocated the monies and refused to award any reimbursement to GTE from the Dow settlement. We believe that Appellants misconstrue *Gutierrez.*

33. Under *Gutierrez,* an employer may be fully reimbursed for past compensation even if the worker has not been fully compensated and will be left with nothing from a third-party settlement. *Id.* at 178, 909 P.2d at 738. This Court rejected the approach which would base an employer's reimbursement on "some equitable formula." *Id.* Instead, the

Court held that where the fairness of the settlement amount is uncontested, employers are entitled to full reimbursement. *Id.*

34. Appellants correctly note that the right to reimbursement arises only after payment of compensation and should not precede compensation. *Brown v. Arapahoe Drilling Co.*, 70 N.M. 99, 104, 370 P.2d 816, 820 (1962). They argue that reimbursement is equally improper when claims have been settled prior to an adjudication of liability because it can reasonably be assumed that a claimant who settles a claim receives less than full compensation. This argument ignores the fact that these claims were not settled prior to an adjudication of liability but that a test trial of thirteen plaintiffs, which represented a typical segment of the claimants, failed to establish Dow's liability. The district court did not err by adopting the special master's recommendation regarding GTE's reimbursement right.

## V. Allocation of Settlement Funds Was Not Arbitrary and Capricious

35. Appellants argue that the allocation of settlement funds to claimants based on their years of employment at GTE was arbitrary and capricious. Appellants request us to remand this case for a reallocation of the settlement proceeds using a combination approach of years of employment and consideration of the degree of exposure and severity of the injury to individual claimants.

36. Appellants rely on NMSA 1978, Section 52-3-10(A) (Repl.Pamp.1991) (liability of employers to compensate employees for disability due to occupational disease arising out of employment), and 74 Am.Jur.2d *Torts* Section 7 (1974) (no cause of action without a showing of damages) to support their argument that they should receive proportionately more of the available Dow settlement funds than some of their co-plaintiffs. However, no prior judicial determination has been made regarding each plaintiff's degree of exposure to toxins, nor has proximate cause been established in a judicial proceeding. Appellants provide nothing other than personal testimonials on which the district court could determine that their injuries are such that they deserve more than their co-plaintiffs from the settlement proceeds.

37. Appellants' proposed methodology for allocating the resources and the method recommended by the special master, are both permissible. New Mexico courts give deference to a special master's choice of formula as to the allocation of limited resources when that formula is permissible. *See Niccum*, 102 N.M. at 332-33, 695 P.2d at 482-83; *Gottlieb*, 43 F.3d at 487. Substantial evidence was presented in this case to support the special master's methodology, including the lack of information about each claimant's degree of injury. Therefore, we hold that the district court did not err in adopting the special master's recommendations for the distribution of the settlement monies among the claimants based on years of service.

*CONCLUSION*

38. We reverse the district court's judgment denying Appellants' request for an accounting and remand with instructions for the district court to order a full accounting of disbursements from the GTE medical trust fund and from the Shell/DuPont settlement fund and to reconsider, on the basis of the accounting, whether the attorneys are entitled to the awarded fees. The judgment of the district court is affirmed as to all other issues.

39. **IT IS SO ORDERED.**

APODACA, C.J., and ALARID, J., concur.