**Certiorari Denied, January 11, 2013, No. 33,918**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2013-NMCA-023**

**Filing Date: October 24, 2012**

**Docket No. 30,824**

**STATE OF NEW MEXICO ex rel.**
**OFFICE OF THE STATE ENGINEER,**
**THOMAS C. TURNEY,**

      **Plaintiffs-Appellees,**

**v.**

**UNITED STATES OF AMERICA,**
**ELEPHANT BUTTE IRRIGATION**
**DISTRICT, CITY OF EL PASO,**
**NEW MEXICO STATE UNIVERSITY,**
**STAHMAN FARMS, OTHER CLAIMANTS**
**TO BE DETERMINED, and UNKNOWN**
**CLAIMANTS,**

      **Defendants,**

**and**

**JOHN D. BACA,**

      **Subfile Defendant-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF DOÑA ANA COUNTY**
**Jerald A. Valentine, District Judge**

DL Sanders, Special Assistant Attorney General
Richard A. Allen, Special Assistant Attorney General
Martha C. Franks, Special Assistant Attorney General
Santa Fe, NM

for Appellees

1

Peters Law Firm, LLC
Lee E. Peters
Las Cruces, NM

for Appellant

**OPINION**

**FRY, Judge.**

**{1}** This case involves a dispute over ownership of a ground water right on approximately twenty-eight acres of elevated bench lands on Appellant John D. Baca's farm property in Salem, New Mexico. In the course of a subfile proceeding initiated by the Office of the State Engineer (OSE) in order to determine ownership of water rights on Baca's farm, the district court appointed a special master to try the matter. The special master filed a report recommending that the district court grant ownership of the disputed water right to Baca. Upon the OSE's written objections to the report, the district court rejected the special master's report in part and then entered an order declaring that Baca did not have a water right on the disputed bench lands.

**{2}** Baca appeals, arguing that the district court was bound by the factual findings and legal conclusions entered by the special master and that the court improperly re-weighed the evidence and applied an erroneous standard of review in rejecting the special master's report. We agree and conclude that the district court's actions were improper under the standard of review established by our case law. We therefore reverse the district court's order and remand for the district court to consider the OSE's remaining objection on the issue of abandonment of the water right.

**I.    BACKGROUND**

**{3}** The present case arose as a subfile proceeding in the course of a general adjudication of water rights in the lower Rio Grande stream system.[1] At issue in this particular subfile proceeding is a disputed water right on Baca's farm in Salem, New Mexico. Baca purchased

---

[1]Adjudications are generally "lawsuits in state or federal court to resolve all claims to water use in the state of New Mexico including those of pueblos, tribes and the federal government." Denise D. Fort, The Utton Center, *Water Matters*!, Adjudications 4-1 (2012), *available at http://uttoncenter.unm.edu/pdfs/Water-Matters -2012/2012_water_matters_final_full-publication.pdf*. During the subfile phase of an adjudication, the Office of the Attorney General (through the use of OSE-specific adjudication teams) determines the elements of individual water rights for each claimant. Fort, *supra*, 4-2 to 4-3. Each "subfile" corresponds to an individual claimant, such as Baca in this case, or a city or Native American tribe. *See* Fort, *supra*, 4-3.

the 132-acre farm in 1981. For purposes of the subfile proceeding, Baca's property was divided into two distinct areas: (1) the "valley lands," consisting of forty-two acres; and (2) the "bench lands," consisting of approximately twenty-eight acres that were terraced into eighteen benches that took the shape of a chevron when viewed from the air. The subfile for Baca's property consists of five water rights, only one of which is at issue in this appeal. This disputed water right is associated with the bench lands and, more specifically, it is the right to ground water produced from a well for the upper sixteen benches (the disputed benches) on Baca's property.

{4}     Over the span of four years beginning in 2001, the OSE sent a series of offers of judgment to Baca during the subfile phase of the adjudication in order to reach an agreement on this disputed water right. When the parties were unable to come to an agreement on this water right, the district court referred the matter to a special master pursuant to its authority under Rule 1-053 NMRA.

{5}     Rule 1-053 governs the appointment and use of special masters in district court proceedings. In non-jury cases, a district court is permitted to refer a matter to a special master upon a showing of an exceptional condition or "in matters of account and of difficult computation of damages." Rule 1-053(B). In this case, the district court appointed attorney Stephen Snyder as special master after determining that exceptional conditions warranted the referral. The district court's order of reference directed the special master to "hear and determine all claims and contentions of the parties" and to "make findings of fact and conclusions of law and prepare and file a report" with the court at the conclusion of the proceedings. *See* Rule 1-053(E)(1) (requiring the special master to prepare a report on the matter submitted to him and file the report with the court).

{6}     The parties tried two issues before the special master: (1) whether a predecessor in interest to Baca established a ground water right on the disputed benches and, if so, (2) whether Baca abandoned this water right. In the proceedings before the special master, the OSE took the position that a water right was never established for the disputed benches because water from the well was not put to beneficial use on these benches. *See Hydro Res. Corp. v. Gray*, 2007-NMSC-061, ¶ 21, 143 N.M. 142, 173 P.3d 749 (stating the general principle that "[g]round water, like surface water, must be appropriated and applied to beneficial use before a vested water right will result"). Alternatively, the OSE claimed that Baca had abandoned any water right that may have once existed on the disputed benches. Over the course of a three-day trial before the special master, the parties presented testimony from lay and expert witnesses as well as documentary evidence in the form of aerial photographs and affidavits in support of their positions.

{7}     Following the hearing, the special master filed a report with the district court in which he found that irrigation ground water rights were established on the disputed benches and that Baca had not abandoned this water right. The OSE objected to the special master's report and, following a hearing, the district court entered an order rejecting in part the special master's report.

3

**{8}** The district court disagreed with a majority of the special master's findings of fact concerning the testimony and documentary evidence presented at trial. In particular, the district court found that "the record d[id] not support [t]he [s]pecial [m]aster's [f]indings that irrigation water has ever been used to grow a crop on the disputed bench lands." The district court also rejected the special master's reliance on a declaration of water rights filed by Baca shortly after the farm purchase. In addition, the court rejected the special master's conclusion that water was put to beneficial use on the disputed benches. The district court held that Baca did not have a water right on the disputed bench lands. Because the court determined that a ground water right had not been established on the disputed bench lands, the court did not address the OSE's objections to the special master's findings on abandonmennt. This appeal followed.

## II.    DISCUSSION

**{9}** On appeal, Baca's overarching argument is that the district court improperly disregarded the special master's report. Specifically, Baca argues that the district court was bound by the factual findings entered by the special master because the findings were supported by substantial evidence and that the court improperly re-weighed the evidence and applied an erroneous standard of review in rejecting the special master's report. After delineating the proper standard of review in this case, we examine whether the district court's specific reasons for rejecting the special master's report withstand scrutiny.

### A.    Standard of Review

**{10}** Because this case involves proceedings before a special master and a district court's subsequent review of the special master's report, two standards of review are relevant in this case: the standard the district court applies to review of the special master's report and the standard that our Court applies to review of the district court's order.

### 1.    District Court's Review of Special Master's Report

**{11}** Rule 1-053(E)(2) provides that in non-jury actions, "the [district] court shall accept the [special] master's findings of fact unless clearly erroneous." Our case law—with one exception—has equated the term "clearly erroneous" with the familiar substantial evidence standard of review.

**{12}** We begin with *Lopez v. Singh*, in which our Supreme Court interpreted the rule's language as directing that "the findings of the [special] master, if supported by substantial evidence, are binding upon the trial court." 53 N.M. 245, 247, 205 P.2d 492, 493 (1949). The Court went on to state that "findings will not be set aside merely because the record tends to show that they are not supported by the weight of the evidence." *Id.* The Court observed that the New Mexico rule applicable to a special master's findings was, at the time *Lopez* was decided, identical to its federal counterpart and cited with approval federal case law defining the standard of review. *Id.* at 247-48, 205 P.2d at 493. "[S]o far as the finding

4

of the [special] master . . . who saw the witnesses depends upon conflicting testimony or upon the credibility of witnesses, or so far as there is any testimony consistent with the finding, it must be treated as unassailable." *Id.* at 247, 205 P.2d at 493 (internal quotation marks and citation omitted). Applying this standard to the case before it, the Court in *Lopez* concluded that the district court, which had modified some of the special master's findings and rejected others, had improperly weighed the evidence. *Id.* at 248-49, 205 P.2d at 493-94. Because the special master's findings were supported by substantial evidence, the Supreme Court reversed the district court's order and remanded with instructions to reinstate the special master's findings. *Id.* at 249, 205 P.2d at 494.

**{13}** Our Supreme Court continued to apply the standard of review stated in *Lopez* in three subsequent cases. In *Purdy v. Tucker*, the Court affirmed the district court's confirmation of the referee's report, stating that "[i]f . . . the testimony before the referee was conflicting, or if it depended upon the credibility of the witnesses, and the referee found the facts from that testimony, his findings in this particular are not subject to attack, and are binding upon the trial court unless, after an examination of the record, it can discover there was no substantial testimony to sustain them."[2] 54 N.M. 86, 90, 214 P.2d 766, 768 (1950). In *Witt v. Skelly Oil Co.*, the Supreme Court applied the *Lopez* standard and reversed the district court's rejection of some of the special master's findings of fact. *Witt*, 71 N.M. 411, 416, 418, 379 P.2d 61, 64-66 (1963). And in *State ex rel. Reynolds v. Lewis*, a water law case, the Supreme Court affirmed the district court's adoption of the special master's findings and conclusions "under the well-established rule" that findings supported by substantial evidence will not be disturbed. 74 N.M. 442, 443, 394 P.2d 593, 593 (1964). The Court further stated that "[t]he fact that there may have been contrary evidence which would have supported a different finding does not permit us to weigh the evidence." *Id.*

**{14}** Six years after it decided *Lewis*, the Supreme Court in *Martin v. Foster*, 81 N.M. 583, 470 P.2d 304 (1970), applied a standard of review different from that applied in prior cases. The case involved a dispute over a construction contract, and the parties submitted the dispute to three special masters to resolve. *Id.* at 583, 470 P.2d at 304. The special masters submitted a report that the district court adopted, and the Supreme Court reversed. *Id.* at 584-85, 470 P.2d at 305-06. In stating the standard of review to be applied by the district court, the Supreme Court did not cite any of the cases that we have discussed above. Instead, the Court noted that New Mexico's Rule 53(e)(2) (cited as NMSA 1953, § 21-1-1(53)(e)(2) (Vol 4, Repl.), which in relevant part is identical to current Rule 1-053(E)(2)) was identical to its federal counterpart and cited a Tenth Circuit Court of Appeals case for the proposition that "findings are clearly erroneous if the reviewing court on the entire evidence has the definite and firm conviction that a mistake has been committed." *Martin*, 81 N.M. at 584-85, 470 P.2d at 305-06 (citing *United States v. Waymire*, 202 F.2d 550, 553 (10th Cir. 1953) (internal quotation marks omitted)). The Court concluded that the special masters had decided the dispute on the basis of standards different from the standards

_____

[2]Rule 1-053(A) defines the word "master" as including "a referee."

required by the construction contract and, therefore, "the findings based on those standards were clearly erroneous." *Id.* (internal quotation marks omittted).

**{15}** The standard of review applied in *Martin* appears to permit rejection of a special master's findings even if they are supported by substantial evidence. The standard stated in *Martin* is the same as the pre-2003 federal definition of "clearly erroneous." In 2003, Fed. R. Civ. P. 53 was substantially revised to permit de novo review of a special master's findings and conclusion. Under the pre-2003 federal standard, "the reviewing court may [disregard] a finding even if supported by substantial evidence when the clear weight of the evidence suggests that the finding is incorrect." 9 James Wm. Moore, *et al.*, *Moore's Federal Practice*, § 52.31[4], 52-65 (3d ed. 2012). It is this pre-2003 federal standard that the OSE asks us to apply in the present case.

**{16}** In our view, the standard stated in *Martin* is an anomaly in New Mexico's jurisprudence related to Rule 1-053. The standard permitting rejection of a special master's findings upon "the definite and firm conviction that a mistake has been committed" does not appear in any other New Mexico case addressing Rule 1-053. *Martin*, 81 N.M. at 585, 470 P.2d at 305 (internal quotation marks and citation omitted). Furthermore, all of the relevant cases preceding and following *Martin* apply the substantial evidence standard of review to a special master's findings of fact. For example, in *State ex rel. Reynolds v. Niccum*, 102 N.M. 330, 695 P.2d 480 (1985), another water law case, our Supreme Court ignored *Martin* and again relied on *Lopez* and *Witt*, stating, "Only when there is total lack of substantial evidence to support the special master's findings, is the court warranted in rejecting the [special] master's report." *Niccum*, 102 N.M. at 332, 695 P.2d at 482. The Court went on to state that "[w]hen there is substantial evidence[,] the special master's findings are binding upon the trial court." *Id.* And, following *Niccum*, this Court applied the substantial evidence standard in *Lozano v. GTE Lenkurt, Inc.*, 1996-NMCA-074, ¶ 15, 122 N.M. 103, 920 P.2d 1057, stating that "an order or judgment by a district court adopting a special master's report will be upheld on appeal if the special master's findings are supported by substantial evidence." We therefore conclude that the district court could reject the special master's findings of fact only if they were not supported by substantial evidence.

**{17}** Although Rule 1-053 does not specify the standard of review that should be applied to a special master's conclusions of law, our case law has established that a special master's conclusions of law are to be reviewed de novo by district courts. *Lee v. Martinez*, 2004-NMSC-027, ¶ 12, 136 N.M. 166, 96 P.3d 291; *see Lozano*, 1996-NMCA-074, ¶¶ 17-18. In examining the special master's conclusions of law, a reviewing court exercises independent judgment without assigning special weight to the special master's conclusions of law. *Lee*, 2004-NMSC-027, ¶ 12.

## 2.     Appellate Review of the District Court's Order

**{18}** The standard of review that an appellate court employs in cases involving Rule 1-053 has not been clearly expressed in New Mexico appellate decisions. However, our case law

leads us to conclude that our review is the same as the review conducted by the district court; that is, we consider whether the special master's findings of fact are supported by substantial evidence. This is the standard of review employed by our Supreme Court in *Lopez*, *Witt*, *Lewis*, and *Niccum*, and by this Court in *Lozano*. This standard is applied regardless of whether the district court had adopted or rejected the special master's findings. *See Niccum*, 102 N.M. at 332-33, 695 P.2d at 482-83 ("Once findings of a special master are adopted and approved by the trial court, th[e appellate] court will not disturb those findings when they are supported by substantial evidence."); *Lewis*, 74 N.M. at 442-43, 394 P.2d at 593 (explaining that "an appellate court must first review the sufficiency of the evidence to support [the findings] made by the [special] master" and affirming district court's adoption of the special master's findings because they were supported by substantial evidence); *Witt*, 71 N.M. at 413, 417, 379 P.2d at 63, 65 (reversing the district court's rejection of some of the special master's findings because the Supreme Court's review of the record established that the special master's findings were supported by substantial evidence); *Lopez*, 53 N.M. at 247-48, 205 P.2d at 493-94 (reversing district court's rejection of certain of the special master's findings because the Supreme Court's review of the evidence failed to reveal that the findings were erroneous, i.e., not supported by substantial evidence); *Lozano*, 1996-NMCA-074, ¶ 15 (explaining that "an order or judgment by a district court adopting a special master's report will be upheld on appeal if the special master's findings are supported by substantial evidence"). Thus, we give no deference to the district court's findings but instead consider only whether the special master's findings of fact were supported by substantial evidence. Nonetheless, we examine the district court's rationale for rejecting the special master's report in this case in order to provide context for our analysis.

**B.      The District Court's Grounds for Rejecting the Special Master's Report**

**{19}**     The district court rejected the special master's report after concluding that the special master's findings concerning beneficial use were "clearly erroneous and not supported by substantial evidence." In its order, the district court relied on this Court's decision in *State ex. rel. Martinez v. McDermett*, 120 N.M. 327, 901 P.2d 745 (Ct. App. 1995).

**{20}**     In New Mexico, "water rights are both established and exercised by beneficial use, which forms the basis, the measure and the limit of the right to use of the water." *Walker v. United States*, 2007-NMSC-038, ¶¶ 21-22, 142 N.M. 45, 162 P.3d 882 (internal quotation marks and citation omitted); *see* NMSA 1978, § 72-1-2 (1907) (stating the beneficial use provision of the state water code). Beneficial use has been defined in our case law as "the use of such water as may be necessary for some useful and beneficial purpose in connection with the land from which it is taken." *McDermett*, 120 N.M. at 330, 901 P.2d at 748 (internal quotation marks and citation omitted). "The concept requires actual use for some purpose that is socially accepted as beneficial." *Id.* An evaluation for beneficial use generally requires an assessment of "the quantity, place of use, and purpose to which water has actually been applied." *Tri-State Generation & Transmission Ass'n, Inc. v. D'Antonio*, 2011-NMCA-015, ¶ 13, 149 N.M. 394, 249 P.3d 932, *cert. granted*, 2011-NMCERT-002, 150 N.M. 617, 264 P.3d 129.

7

**{21}** In this case, the special master concluded that water was "put to beneficial use on all of the [b]ench [l]ands by the end of 1955." As grounds for the beneficial use determination, the special master relied on evidence of crop growth on the disputed bench lands. Specifically, the special master found credible Baca's testimony that in 1981, he observed alfalfa crops growing on all of the bench lands during negotiations for the purchase of the property as well as testimony from other witnesses that they had observed crop growth on the bench lands prior to Baca's purchase of the farm. The special master also found persuasive the testimony of Baca's expert, who opined that aerial photographs predating Baca's purchase of the property showed evidence of cultivation, and that an aerial photograph from 1955, in particular, showed the most signs of cultivation on the bench lands. The special master also noted that the OSE's experts acknowledged that aerial photographs from 1955 and 1974 showed signs of irrigation and that "crops were being grown on some benches."

**{22}** In addition to the foregoing, the special master's report indicated that he relied on two additional items to support beneficial use of the water: (1) evidence that "the [b]ench [l]ands had been constructed for the express purpose of growing crops" and, (2) "an irrigation system [that] had been installed for delivery of water from the . . . [w]ell to all of the [b]enches." The special master stated that he believed it to be "highly unlikely, if not inconceivable, that someone would go to the trouble of constructing the [b]ench [l]ands and installing an irrigation system for those lands without taking the next step of applying irrigation water to the benches."

**{23}** In rejecting the special master's finding of beneficial use, the district court disagreed with the special master that the record supported any finding that "irrigation water has ever been used to grow a crop on the disputed bench lands." The district court also appears to have relied on *McDermett* to reject the special master's reliance on the preparatory steps taken toward cultivation as being indicative of beneficial use. On appeal, the OSE maintains that the special master erred as a matter of law based on our holding in *McDermett*. As we explain below, although we agree with the OSE's position that the special master's reliance on the evidence of preparatory steps was improper under *McDermett*, we nevertheless conclude that the district court erred in disregarding the evidence supporting the special master's findings concerning crop growth. *See McDermett*, 120 N.M. at 332, 901 P.2d at 750 (observing that "growing crops constitutes a beneficial use of water").

**{24}** Of relevance here, *McDermett* concerned the issue of whether a predecessor in interest to the defendant property owners had established proof of beneficial use of water over an eighty-four acre tract for which water rights were in dispute. *Id.* at 329-30, 901 P.2d at 747-48. At trial, the defendants presented documentary evidence that a predecessor in interest had drilled a well on the land in question, "put a pump in it, . . . dug two main ditches and approximately six miles of laterals on the property, . . . [and ran] water apparently . . . through all the ditches and laterals" as far back as the year 1907. *Id.* at 330, 901 P.2d at 748. Additional documentary evidence was presented showing that crops were grown on approximately twenty acres during that year and that some forty years later, crops

8

were grown on the remainder of the land. 120 N.M. at 329, 901 P.2d at 747. The district court determined that the diversion of water onto the entire water tract was sufficient to constitute beneficial use. *Id.* at 330-31, 901 P.2d at 748-49. This Court reversed, holding that "[a] diversion alone is not beneficial use" and that "[t]here must be an ultimate, actual beneficial use of the water resulting from the diversion." *Id.* at 331, 901 P.2d at 749. We stated that "[f]or a diversion of water for the purpose of irrigation to constitute beneficial use, the water must be used to irrigate crops within a reasonable time." *Id.* Under the facts presented in that case, there was evidence of actual crop growth—and thus, beneficial use—solely on twenty acres in 1907 and, by contrast, no evidence that water was applied to beneficial use on the remaining sixty-four acres in that year. *Id.* Thus, we concluded that the district court erred in determining that water had been applied to beneficial use on the entire eighty-four acre tract. *Id.*

**{25}** In the present case, we agree with the OSE that the special master's reliance on the evidence of preparatory steps taken toward irrigation and/or cultivation to establish beneficial use was improper under *McDermett*. Although the special master appeared to understand the holding of *McDermett* that a diversion alone is not beneficial use, the special master nevertheless drew an impermissible inference that construction of the bench lands and installation of an irrigation system was evidence of beneficial use because the special master considered it to be "highly unlikely" that a property owner would take these actions without taking future steps indicative of beneficial use. We are convinced by the OSE's argument that neither of these actions is enough under *McDermett* to establish beneficial use because neither of these reflects an "an ultimate, *actual* beneficial use of the water." *See id.* (emphasis added) (stating that a "diversion of water into irrigation ditches or flooding the land with the diverted water does not, by itself, constitute irrigation for the purpose of establishing beneficial use").

**{26}** However, unlike the factual scenario presented in *McDermett*, the special master's report in this case included findings of actual crop growth on the disputed bench lands. These findings relied in part on Baca's testimony regarding growth of alfalfa crops on all of the bench lands and the testimony from both Baca's and the OSE's experts acknowledging that certain aerial photographs showed signs of cultivation on the bench lands. Even if we set aside the special master's findings regarding the steps taken preparatory to cultivation, these factual findings of crop growth were sufficient, by themselves, to establish beneficial use of water on the disputed bench lands. *See id.* at 332, 901 P.2d at 750 (observing that "growing crops constitutes a beneficial use of water").

**{27}** In rejecting the special master's finding of beneficial use, the district court had to disregard all of this evidence, which is not permissible under the applicable standard of review. As stated in *Witt*, "[T]he master's findings are presumed to be correct and . . . so far as they depend upon conflicting evidence, or upon the credibility of witnesses, or so far as there is any testimony consistent with the findings, they must be treated as unassailable." 71 N.M. at 416, 379 P.2d at 65. The findings were therefore binding on the district court, and we conclude that the district court erred in setting aside the special master's finding of

beneficial use.

**{28}** At oral argument, the OSE argued that as a matter of law, beneficial use cannot occur until crops have been grown *and* harvested. The OSE has cited no authority establishing that evidence of actual harvest is required, and *McDermett* states clearly that "growing crops constitutes a beneficial use of water." 120 N.M. at 332, 901 P.2d at 750. We are not persuaded that Baca had to prove that crops were harvested in order to establish that the water right had been put to beneficial use by the time he purchased the property in question.

**{29}** The OSE raises two arguments on appeal challenging the special master's reliance on a declaration of beneficial use filed by Baca's realtor in April as support for the special master's finding that Baca's predecessors in interest applied the water right to beneficial use on the disputed bench lands. We decline to address these arguments because even without the evidence of the declaration, other substantial evidence supports the special master's finding of beneficial use.

**CONCLUSION**

**{30}** Based on the foregoing, we reverse the district court's order and remand with instructions that the district court consider the OSE's remaining objection to the special master's report on the issue of abandonment of the water right.

**{31}** **IT IS SO ORDERED.**

_____

**CYNTHIA A. FRY, Judge**

**WE CONCUR:**

_____

**MICHAEL D. BUSTAMANTE, Judge**

_____

**JONATHAN B. SUTIN, Judge**

**Topic Index for *State of NM ex rel OSE v. Elephant Butte Irrigation Dist.*, No. 30,824**

**APPEAL AND ERROR**
Appellate Review
Remand
Standard of Review
Substantial or Sufficient Evidence

**CIVIL PROCEDURE**
Findings and Conclusions
Special Master

**GOVERNMENT**
State Engineer

**NATURAL RESOURCES**
Crops and Produce
Irrigation
Water Law