2007-NMSC-046

164 P.3d 934

Cora MAES, Plaintiff–Petitioner,

v.

AUDUBON INDEMNITY INSURANCE GROUP, Defendant–Respondent.

No. 29,624.

Supreme Court of New Mexico.

June 15, 2007.

Rehearing Denied July 11, 2007.

Sanders & Westbrook, P.C., Maureen A. Sanders, Albuquerque, NM, Dennis T. Sanchez, Taos, NM, for Petitioner.

Miller Stratvert, P.A., Ann Maloney Conway, Deron Bradley Knoner, Albuquerque, NM, for Respondent.

Felker, Ish, Ritchie & Geer, P.A., Carol J. Ritchie, Mark L. Ish, Santa Fe, NM, for Amicus Curiae New Mexico Property and Casualty Insurance Guaranty Association.

**OPINION**

SERNA, Justice.

{1} Cora Maes ("Maes") sued her property insurer, Audubon Indemnity Insurance Group ("Audubon"), after it originally denied her insurance claim for destroyed property. Audubon asserted immunity from suit on the basis that Maes obtained her insurance with Audubon through the New Mexico Fair Access to Insurance Requirements Plan Act ("FAIR Plan Act" or "the Act"), NMSA 1978, §§ 59A–29–1 to –9 (1985, as amended through 1999), which provides statutory immunity from suit for certain parties with respect to certain actions taken pursuant to the FAIR Plan Act. Section 59A–29–7 (or "immunity provision"). We issued a writ of certiorari to the Court of Appeals to review its opinion, which held that Audubon was statutorily immune from suit. *Maes v. Audubon Indem. Ins. Group*, 2006–NMCA–021, 139 N.M. 39, 127 P.3d 1126. For the reasons discussed below, we hold that the FAIR Plan Act's immunity provision does not apply to Audubon; and, therefore, Audubon is not immune from Maes's suit. Accordingly, we reverse the Court of Appeals and remand to the district court.

## I. BACKGROUND

### A. Statewide Plans to Assure Fair Access to Insurance Requirements

{2} The Legislature passed the New Mexico FAIR Plan Act in 1985 under the framework of the federal Urban Property Protection and Reinsurance Act of 1968 ("UPPRA"), *see* 12 U.S.C. §§ 1749bbb to 1749bbb–21 (1970) (repealed 1985–1996), which Congress promulgated following inner city rioting in the late 1960s. 1 Lee R. Russ & Thomas F. Segalla, *Couch on Insurance* § 4:6 (3d ed.2005). The UPPRA provided for federal reinsurance against riot and civil unrest losses to insurance companies. 12 U.S.C. § 1749bbb to § 1749bbb–21; *see* Russ & Segalla, *supra*, § 4:6. To be eligible for such reinsurance, the UPPRA required insurers to cooperate with their state insurance authorities to establish fair access to insurance requirements ("FAIR") plans "designed to make essential property insurance more readily available." 12 U.S.C. § 1749bbb–3(a) to (b). FAIR plans are intended to create a means for high-risk property owners to obtain essential property insurance coverage, where they would not otherwise be able to do so on the normal insurance market because their risks would be unprofitable for insurance companies to assume on a voluntary basis. *See* Russ & Segalla, *supra*, §§ 1:27; 4:6.

### B. The New Mexico FAIR Plan Act

{3} The New Mexico FAIR Plan Act authorizes all insurers licensed to write essential property insurance in New Mexico to establish and maintain a FAIR plan to pro-

vide essential property insurance to responsible and qualified applicants unable to obtain insurance on the open market. Section 59A–29–2; NMPIP Bylaws, introduction, at 1, http://w ww.nmprc.state.nm.us/insurance/pdf/nmfairplanbylaws.pdf [hereinafter NMPIP Bylaws]. The Act further authorizes insurers to form the non-profit underwriting association known as the New Mexico Property Insurance Program ("NMPIP"). *Id.* In order to transact property insurance business in New Mexico, all insurers licensed to write essential property insurance in the state are required to become and remain members of the FAIR Plan and the NMPIP and to subscribe to the NMPIP Articles of Association. Section 59A–29–3.

{4} The NMPIP is not itself an insurance company. NMPIP Bylaws, introduction, at 1. However, the Act authorizes the NMPIP, "on behalf of its members[,] to cause to be issued property insurance policies." Section 59A–29–4. The program operates as follows. Applicants or their representatives or insurance agents apply directly to the NMPIP for coverage. NMPIP Bylaws, introduction, at 1. If the NMPIP decides the property is eligible for insurance, it forwards the application to a "Servicing Insurer." *Id.* § IV.1, at 3. Audubon is a Servicing Insurer for the NMPIP, which means that it has contracted with the NMPIP "to issue and service policies on risks referred to it by the [NMPIP]." *Id.* § III.8, at 2. The Servicing Insurer then issues and delivers the actual policy directly to the applicant and services the policy, remitting the premium to the NMPIP. *Id.* § V.1, at 3. The NMPIP is authorized to provide reimbursement for all of the Servicing Insurer's costs and expenses. NMPIP Bylaws, § XII.6, at 8.

{5} The FAIR Plan Act also provides a remedy for aggrieved insureds. They may appeal the actions and decisions of the FAIR Plan administrators, the NMPIP, or any insurer as a result of its participation in the FAIR Plan and the NMPIP to the New Mexico Superintendent of Insurance. Section 59A–29–6(A). Thereafter, all final orders and decisions of the Superintendent of Insurance are subject to review in district court. Section 59A–29–6(B).

{6} Finally, the Act provides immunity to certain parties for certain actions taken with respect to the FAIR Plan:

> There shall be no liability on the part of, and no cause of action of any nature shall arise against, any member insurer, the association or its agents or employees, the governing committee or the superintendent or his representative for any action taken by them in the performance of their powers and duties under the FAIR Plan Act.

Section 59A–29–7.

{7} The NMPIP reinsures all insurance policies issued by the Servicing Insurer pursuant to the FAIR Plan. Section 59A–29–4 (authorizing the NMPIP "to reinsure in whole or in part any such policies and to cede any such reinsurance"); NMPIP Bylaws, § VI.1, at 4. Reinsurance refers to:

> the ceding by one insurance company to another of all or a portion of its risks for a stipulated portion of the premium. In a true reinsurance transaction, the liability of the reinsurer is solely to the reinsured, which retains all contact with the original insured, and handles all matters prior to and subsequent to loss.

14 Eric Mills Holmes & L. Anthony Sutin, Holmes' *Appleman on Insurance,* § 102.1 (2d Ed.2000) (quoted authority omitted). We adopted an almost identical definition of reinsurance in 1973. *Sierra Life Ins. Co. v. First Nat'l Life Ins. Co.,* 85 N.M. 409, 412, 512 P.2d 1245, 1248 (N.M.1973) (quoting similar section from an earlier edition of *Appleman Insurance Law and Practice* ). Reinsurance essentially "operates to shift part of the risk of loss under an insurance policy from the original insurer to the reinsurer, with the original insurer remaining in privity with the insured." Holmes & Sutin, *supra,* § 102.1 (internal quotation marks omitted). Indeed, one of the fundamental principles of reinsurance is that "the reinsurer ordinarily has no liability to the policyholder of the ceding insurer." *Id.* § 106.7. Our reinsurance statute reflects this principle: "No person shall have any rights against the reinsurer which are not expressly stated in the reinsurance contract or in a written agreement between

**238**

such person and the reinsurer." NMSA 1978, § 59A–7–11(G) (1993).

## II. FACTUAL AND PROCEDURAL HISTORY

{8} Maes's Arroyo Seco property was completely destroyed by fire on May 2, 2000. The property was insured by Audubon through the New Mexico FAIR Plan, under a policy effective March 20, 2000 to March 20, 2001. Maes filed a claim under her policy on May 3, 2000. Audubon denied liability for the loss on August 3, 2000. Maes then appealed to the New Mexico Superintendent of Insurance pursuant to the mechanism provided for in the New Mexico FAIR Plan Act. Section 59A–29–6(A). On October 19, 2001, the Superintendent of Insurance ruled in favor of Maes, finding that she was entitled to recover under her Audubon policy for the fire damage to her property. Audubon appealed the decision in district court, pursuant to the FAIR Plan Act, and the district court affirmed the Superintendent's decision on February 13, 2003. On March 6, 2003, Audubon paid Maes the policy limits of $150,000 for her loss.

{9} Thereafter, in an initial Complaint on September 17, 2003, and a Second Amended Complaint on February 5, 2004, Maes sued Audubon in district court for (i) pre- and post-judgment interest on the $150,000 judgment; (ii) breach of the implied covenant of good faith and fair dealing; and (iii) bad faith insurance practices. On June 14, 2004, Audubon moved to dismiss Maes's claims on the ground that Audubon had statutory immunity from suit because it issued the policy as Servicing Insurer of the NMPIP. *See* § 59A–29–7. The district court denied the Motion to Dismiss on October 1, 2004.

{10} Audubon appealed to the Court of Appeals, which, in a split decision, reversed the district court, concluding that Audubon was statutorily immune from suit. *Maes,* 2006–NMCA–021, ¶¶ 1, 7, 139 N.M. 39, 127 P.3d 1126. The Court of Appeals declared the immunity provision "clear and unambiguous" and held that Audubon is an agent of the NMPIP because of its status as the NMPIP's Servicing Insurer and is thus immune from suit. *See Maes,* 2006–NMCA–021, ¶¶ 11, 16, 139 N.M. 39, 127 P.3d 1126. Audubon urges the same reading on ·appeal. Maes, however, contends that Audubon's action in insuring her property was not taken as an agent of the NMPIP and that such an interpretation would produce results wholly incongruous to the legislative purpose of the FAIR Plan Act.

## III. SECTION 59A–29–7 DOES NOT APPLY TO AUDUBON

### A. Standard of Review and Rules of Statutory Construction

{11} In this case, we must decide whether the immunity provision of the New Mexico FAIR Plan Act, Section 59A–29–7, shields Audubon, in its role as the Servicing Insurer of the NMPIP, from Maes's suit.[1] Statutory interpretation is an issue of law, which we review de novo. *State v. Rowell,* 121 N.M. 111, 114, 908 P.2d 1379, 1382 (N.M. 1995). Our primary purpose in interpreting a statute is "to ascertain and give effect to legislative intent." *Kahrs v. Sanchez,* 1998–NMCA–037, ¶ 11, 125 N.M. 1, 956 P.2d 132. In so doing, "we are mindful that statutes are to be interpreted in order to facilitate their operation and the achievement of their goals." *Lopez v. Employment Sec. Div.,* 111 N.M. 104, 105, 802 P.2d 9, 11 (1990). In ascertaining legislative intent, we examine the plain language of the statute as well as the context in which it was promulgated, including the history of the statute and the object and purpose the Legislature sought to accomplish. *See Hovet v. Allstate Ins. Co.,* 2004–NMSC–010, ¶ 10, 135 N.M. 397, 89 P.3d 69; *N.M. State Bd. of Educ. v. Bd. of Educ.,* 95 N.M. 588, 591, 624 P.2d 530, 533 (1981). We give effect to the legislative intent "by adopting a construction which will not render the statute's application absurd or unreasonable and will not lead to injustice or contradiction." *N.M. State Bd. of Educ.,* 95 N.M. at 591, 624 P.2d at 533.

---

1. We agree with the Court of Appeals that Audubon is not immune from Maes's suit as a result of its status as a Member Insurer of the NMPIP, *Maes,* 2006–NMCA–021, ¶ 10, 139 N.M. 39, 127 P.3d 1126, and thus only analyze Audubon's status as a Servicing Insurer of the NMPIP.

## B. Section 59A–29–7 Does Not Apply to Audubon as a Servicing Insurer of the NMPIP

{12} Our resolution of this issue of first impression hinges on one two-prong question. First, we must determine whether Section 59A–29–7 applies to Audubon. In making that determination, we must also decide whether Audubon's actions were the types of actions, which the Legislature contemplated should be immune from suit. As we analyze the issue, the first and second prongs are related. For the following reasons, we hold that Section 59A–29–7 does not apply to Audubon.

{13} In determining whether the immunity provision of the New Mexico FAIR Plan Act applies to Audubon, we commence with an examination of the plain language of the statute. *See State v. Cleve*, 1999–NMSC–017, ¶ 8, 127 N.M. 240, 980 P.2d 23. The Act provides in pertinent part:

> There shall be no liability on the part of, and no cause of action of any nature shall arise against, any member insurer, the association or its agents or employees, the governing committee or the superintendent or his representative for any action taken by them in the performance of their powers and duties under the FAIR Plan Act.

Section 59A–29–7. The immunity provision does not specifically name Servicing Insurers, which indicates a legislative intent that Servicing Insurers were to be treated distinctly from Member Insurers. Our interpretation of the immunity provision is supported by the NMPIP Articles of Association, as Judge Robinson ably pointed out in his dissent below. *Maes*, 2006–NMCA–021, ¶¶ 33–38, 139 N.M. 39, 127 P.3d 1126 (Robinson, J., dissenting). As he explained:

> The NMPIP [Articles of Association Article VIII] [2] provide indemnification to member insurers only as to their status as a member, or by reason of the insurer having personal representatives or employees serving on the governing committee, other

committee or subcommittee, or officer or employee of the NMPIP.

> Even the indemnification for officers and employees of the NMPIP is limited to actions taken in connection with the administration, management, conduct, or affairs of the Program or the Committee. Nowhere in the Articles or Bylaws is there a provision to provide indemnification to the member insurers for actions taken in their capacity as servicing [insurer]s. That failure to provide indemnification is consistent with the notion that the Program is not liable for the servicing [insurer]'s liability arising from the contracts it enters into with its insureds.

*Id.* ¶¶ 33–34 (Robinson, J., dissenting). In addition, the *indemnification* provision further supports a narrow reading of the *immunity* provision because indemnification would be wholly unnecessary if all parties and all actions were immune from suit pursuant to Section 59A–29–7.

{14} Therefore, where as here the Legislature has not specifically indicated an intent to immunize Servicing Insurers from suit, we will not presume one. We find unpersuasive the reasoning of the Court of Appeals that the immunity provision represents a legislative compromise wherein property owners who would otherwise be unable to obtain insurance are able to do so in exchange for being deprived of the right to sue their insurer for bad faith. *Id.* ¶ 22. The Legislature never indicated that, by virtue of obtaining insurance through the NMPIP, insureds would submit themselves to the unfettered whims of the Servicing Insurer. Adopting such a construction would render the FAIR Plan Act's application irrational by leading to the contradiction and injustice of holding some insurers to a good faith standard, while exempting others, merely because of the manner in which the insurance was obtained. Thus, with the legislative intent of the FAIR Plan Act as our polestar, we hold that Section 59A–29–7 does not apply to Audubon as a Servicing Insurer of the NMPIP. *See*

---

**2.** NMPIP Articles of Association, Article VIII, http://www.nmprc.state.nm.us/insurance/pdf/    nmfairplanarticlesofassoc.pdf.

*State v. Herrera*, 86 N.M. 224, 225–26, 522 P.2d 76, 77–78 (1974).

## C. Audubon Is Not an Agent of the NMPIP

{15} The immunity provision specifically immunizes "the association," i.e., the NMPIP, and "its agents." Section 59A–29–7. Having determined that Audubon is not immune as a Servicing Insurer of the NMPIP, the sole issue before us is whether Audubon is an agent of the NMPIP. We are unable to determine, based on the plain language alone, whether Audubon is an agent of the NMPIP for purposes of the immunity provision. Therefore, we must construe Section 59A–29–7, in the context of its legislative purpose and history, to determine whether Audubon is an agent of the NMPIP and thus immune from suit on that basis. *See In re Extradition of Martinez*, 2001–NMSC–009, ¶ 14, 130 N.M. 144, 20 P.3d 126; *Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998–NMSC–020, ¶ 28, 125 N.M. 401, 411, 962 P.2d 1236, 1246 (citing *State ex rel. Helman v. Gallegos*, 117 N.M. 346, 351–52, 871 P.2d 1352, 1357–58 (1994)).

{16} The Court of Appeals held that Audubon, as the Servicing Insurer of the NMPIP, is an agent of the NMPIP and, on that basis, is entitled to statutory immunity pursuant to Section 59A–29–7. *Maes*, 2006–NMCA–021, ¶¶ 11, 13, 139 N.M. 39, 127 P.3d 1126. We decline to so hold. The Court of Appeals based this determination on the definition of "agent" contained in UJI 13–401 NMRA:

> An agent is a person who, by agreement with another called the principal, represents the principal in dealings with third persons or transacts some other business, manages some affair or does some service for the principal, with or without compensation. The agreement may be oral or written.

The Court of Appeals reasoned that because "Audubon has an agreement with the FAIR Plan to service the policies underwritten by the Plan, and Audubon is paid a fee for doing so[,] ... Audubon is an agent of the FAIR Plan because it both 'manages some affair' and 'does some service for' the Plan." *Maes*, 2006–NMCA–021, ¶ 11, 139 N.M. 39, 127 P.3d

1126. Audubon urges us to adopt the agency analysis of the Court of Appeals and, on that basis, hold it immune from Maes's suit.

{17} The parties agree on this definition of "agent," but we are not persuaded that it provides the full picture of the nature and formation of the agency relationship for all purposes. The common law emphasizes the fiduciary nature of the agency relationship, which does not arise until "one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise consents so to act." Restatement (Third) of Agency § 1.01 (2006). While Audubon and the NMPIP agreed that Audubon, as the Servicing Insurer of the NMPIP, would issue policies to persons referred by the NMPIP, and in return the NMPIP would reinsure all such policies and provide reimbursement for Audubon's related costs and expenses, this agreement does not evince the control necessary to form or constitute an agency relationship.

{18} Audubon attempts to demonstrate that the NMPIP has "ultimate control ... over the decisions and actions of its Servicing Insurer" by focusing our attention on Sections VIII and IX of the NMPIP Bylaws. Section VIII grants the NMPIP control over cancelling policies issued pursuant to the FAIR Plan Act. NMPIP Bylaws, § VIII, at 4–6. Section IX provides for an appeal by "[a]ny applicant for insurance and any person insured under the Plan or any affected Insurer [to] appeal to the Governing Committee within fifteen (15) days after any final ruling, action or decision of the Program." *Id.* § IX, at 6. Audubon would have us read this provision as demonstrating that

> any ruling, action or decision affecting a person 'insured under the Plan' is a ruling, action or decision of the Program .... [and as] further demonstrat[ing] that the ruling, action, or decision of the Program (in this case through its agent the Servicing Insurer), is subject to review by the Governing Committee of the NMPIP.

{19} Audubon misconstrues the NMPIP Bylaws in urging us to find the requisite control. These provisions, taken together, do

not demonstrate that "anything and every-thing done in relation to a policy of insurance issued under the FAIR Plan Act, is done by the NMPIP, or by the Servicing Insurer subject to the review and authority of NMPIP," as Audubon contends. The rea-sonable construction of these provisions, read in the context of the Bylaws as a whole, is that the NMPIP has control over certain aspects of the FAIR Plan insurance policies, e.g., whether property is eligible for insur-ance under the FAIR Plan, *Id.* § IV.1, at 3, and whether to cancel a policy issued under the FAIR Plan, *id.* § VIII, at 4–6, and that the NMPIP Governing Committee has au-thority over administration and budgeting of the FAIR Plan, *id.* § XII.6–7, at 8. The Bylaws also make specific provision for the types of relationships into which the NMPIP Governing Committee may enter:

> The Governing Committee shall be empow-ered to contract with Servicing Insurers and provide reimbursement for all costs and expenses incurred by such Servicing Insurers; to appoint or otherwise contract for the services of a manager, employees or independent contractors which are rea-sonably necessary to carry on the business of the Program and Plan.

*Id.* § XII.6, at 8. However, the reasonable reading of these provisions, and the reading which we adopt, is that the requisite control does not exist nor does any textual basis from which we can imply a principal-agent relationship between the NMPIP and Audu-bon.

{20} We find guidance in the analogous reasoning applied to cases construing the immunity available under the Tort Claims Act. In one such case, our Court of Appeals determined that a community mental health facility was not an agent of the state for purposes of the Tort Claims Act and thus was not immune from suit. *Armijo v. Dept. of Health and Env't,* 108 N.M. 616, 775 P.2d 1333 (Ct.App.1989). The Court of Appeals came to this conclusion despite an extensive state regulatory scheme to which Border Area, the mental health facility, was subject, including "safety, building standards, client eligibility, and extensive requirements of case documentation." *Id.* at 618, 775 P.2d at

1335. However, "[t]he actual clinical deci-sions about which plaintiff complain[ed], as well as who w[ould] make those decisions, were reserved by [sic] Border Area." *Id.* The Court of Appeals found it "clear that [the Health and Environment Department] did not regulate what [wa]s alleged to have caused plaintiff's injuries" because, among other reasons, "the type of regulation at is-sue in this case d[id] not give the state the right to control the *details* of the work of Border Area." *Id.* (emphasis added). In reaching this conclusion, the Court of Ap-peals found persuasive *United States v. Or-leans,* 425 U.S. 807, 96 S.Ct. 1971, 48 L.Ed.2d 390 (1976), in which the United States Su-preme Court "distinguished actions taken to insure [sic] compliance with the voluminous regulations from the actual supervision of the day-to-day affairs of the [community action] program, and held that the program was not an agency of the United States" for purposes of the Federal Tort Claims Act. *Armijo,* 108 N.M. at 620, 775 P.2d at 1337.

{21} Indeed, we similarly held in *Cole v. City of Las Cruces* that notwithstanding the agreement between the City of Las Cruces and the Rio Grande Natural Gas Association which provided that "the City shall have the right to supervise, direct and control the employees of the Association" and that "the City was 'to solely operate and maintain the Association's system,'" the Association was not an agent or instrumentality of the City for purposes of the Tort Claims Act and thus was not immune from suit. 99 N.M. 302, 305, 657 P.2d 629, 632 (1983).

{22} The NMPIP indeed regulates Audu-bon, as its Servicing Insurer, much like the Department of Health and Environment reg-ulated Border Area and the City of Las Cruces regulated the Rio Grande Natural Gas Association. Notwithstanding this regu-lation, we hold that the NMPIP does not have the requisite control over Audubon needed to establish a principal-agent rela-tionship, just as Border Area was not an agent of the Department of Health and Envi-ronment, and the Rio Grande Natural Gas Association was not an agent of the City of Las Cruces. The decisions of which Maes complains, i.e., whether or not to pay her

claim, were reserved to Audubon, not to the NMPIP, in the same way as the decisions at issue in *Armijo* and *Cole* were reserved to Border Area and the Rio Grande Natural Gas Association, respectively.

{23} Any other interpretation under the facts of this case would strain the reasonable bounds of the definition of the agency relationship. Audubon, as an insurer writing essential property insurance in the State of New Mexico, is required by law to be a member of the New Mexico FAIR Plan and the NMPIP and is so. *See* § 59A–29–3. However, if we adopt the agency analysis of the Court of Appeals and that urged by Audubon, we overlook the more critical relationship between NMPIP and Audubon, which represents the paradigmatic reinsurance relationship. The Court of Appeals may have been led to its conclusion by its misconstrual of the reinsurance relationship, which it characterized as follows: "[O]nce claims have been approved, the money paid to insureds comes from the Plan itself. Thus, the Plan completely 'reinsures' all policies issued by the servicing insurer, and the servicing insurer acts in an essentially administrative capacity, bearing no actual risk." *Maes*, 2006–NMCA–021, ¶ 4, 139 N.M. 39, 127 P.3d 1126.

{24} While the NMPIP reinsures Audubon, the original or ceding insurer, Audubon remains in privity with Maes, the insured. *See* Holmes & Sutin, *supra*, §§ 102.1, 106.7. Therefore, the fact that the NMPIP reinsures Audubon provides "no direct benefit to the insured," i.e., Maes. *See id.* § 102.1 (quoting *Epland v. Meade Ins. Agency Assoc.*, 564 N.W.2d 203, 205 n. 1 (Minn.1997)). As the reinsurer, the NMPIP protects Audubon, the reinsured, from the risks it undertakes with respect to insuring Maes, but Maes, the original insured, has no interest in the reinsurance relationship between the NMPIP and Audubon. *See id.*

{25} Therefore, the reinsurer, the NMPIP, has a relationship only with Audubon, not with Maes. Maes's relationship with Audubon is not affected by the NMPIP's reinsurance relationship with Audubon, which further reinforces our conclusion that Audubon is not an agent of the NMPIP, and

the FAIR Plan Act's immunity provision does not apply to Audubon as such. In the same way that privity does not run between the reinsurer and the insured, likewise no principal-agent relationship exists between the reinsurer and the original insurer. As one commentator explains:

> It has been urged ... that an agency relationship exists between the insurer and its reinsurer, with the reinsurer being the principal directly responsible for the acts or omissions of the insolvent insurer.... However, since the right of a principal to control the behavior of an agent is an essential element of an agency relationship, courts are unwilling to bind a reinsurer for the acts of the reinsured company unless it is clear from the reinsurance agreement that the reinsurer has control over the relationship that the original insurer has with its policyholders.

Holmes & Sutin, *supra*, § 106.7; *accord* § 59A–7–11(G). No such control exists here. Therefore, Audubon, the original insurer, is not the agent of the NMPIP, the reinsurer, for the purposes of negotiating and settling claims. *Cf.* Holmes & Sutin, *supra*, § 106.7 (noting that "[e]ven when a reinsurer has become actively involved in settlement negotiations between reinsured insurer and its policyholders, courts have refused to find liability under an agency or joint enterprise theory"). The fiduciary relationship runs between Maes and Audubon, as her direct insurer, and that relationship does not change, as amicus New Mexico Property and Casualty Insurance Guaranty Association contends, merely because the policy was issued under the auspices of the FAIR Plan.

## IV. CONCLUSION

{26} Based on the foregoing analysis, we hold that the FAIR Plan Act's immunity provision, Section 59A–29–7, does not apply to Audubon as a Servicing Insurer of the NMPIP. We further hold that Audubon, as a Servicing Insurer of the NMPIP, is not an agent of the NMPIP and, accordingly, is not immune from Maes's suit on that basis. Having held that the FAIR Plan Act's immunity provision does not apply to Audubon as Servicing Insurer nor as an agent of the

NMPIP, we do not separately address whether Audubon's actions were "in the performance of . . . powers and duties under the FAIR Plan Act." *See* § 59A–29–7. Accordingly, we reverse the Court of Appeals and remand to the district court.

{27} **IT IS SO ORDERED.**

WE CONCUR: EDWARD L. CHÁVEZ, Chief Justice, PAMELA B. MINZNER, PETRA JIMENEZ MAES, and RICHARD C. BOSSON, Justices.