**Certiorari Granted, February 9, 2011, No. 32,704**

**IN THE COURT OF APPEALS OF THE STATE OF NEW MEXICO**

**Opinion Number: 2011-NMCA-015**

**Filing Date: October 28, 2010**

**Docket No. 27,802**

**TRI-STATE GENERATION AND
TRANSMISSION ASSOCIATION, INC.
and NEW MEXICO MINING ASSOCIATION,**

        **Petitioners-Appellees,**

**v.**

**JOHN D'ANTONIO, JR.,
NEW MEXICO STATE ENGINEER,**

        **Respondent-Appellant.**

**APPEAL FROM THE DISTRICT COURT OF SOCORRO COUNTY
Matthew G. Reynolds, District Judge**

Rodey, Dickason, Sloan, Akin & Robb, P.A.
Sunny J. Nixon
James P. Bieg
Soha F. Turfler
Santa Fe, NM

for Appellees

Gary K. King, Attorney General
Stephen R. Farris, Assistant Attorney General
Frances C. Bassett, Assistant Attorney General
Judith Ann Moore, Assistant Attorney General
Santa Fe, NM

New Mexico Office of the State Engineer
John D'Antonio, Jr., State Engineer
DL Sanders, Special Assistant Attorney General
Santa Fe, NM

1

Sutin, Thayer & Browne, P.C.
Paul Bardacke, Special Assistant Attorney General
Peter S. Kierst, Special Assistant Attorney General
Kimberly M. Bannerman, Special Assistant Attorney General
Albuquerque, NM

for Appellant

Hennighausen & Olsen, L.L.P.
A.J. Olsen
Fred H. Hennighausen
Alvin F. Jones
Roswell, NM

Richard A. Simms
Hailey, ID

for Amicus Curiae Pecos Valley Artesian Conservancy District

Adolfo J. Méndez II, Assistant General Counsel/Special Assistant Attorney General
Santa Fe, NM

for Amicus Curiae New Mexico Environment Department

Hubert & Hernandez, P.A.
Lee E. Peters
Las Cruces, NM

for Amicus Curiae New Mexico Cattle Growers' Association

Hubert & Hernandez, P.A.
Steven L. Hernandez
Las Cruces, NM

for Amicus Curiae Carlsbad Irrigation District

Hubert & Hernandez, P.A.
Beverly J. Singleman
Las Cruces, NM

for Amicus Curiae Elephant Butte Irrigation District

Davidson Law Firm, LLC

Tessa T. Davidson
Tatiana D. Engelmann
Corrales, NM

for Amicus Curiae New Mexico Pecan Growers

Victor R. Marshall & Associates, P.C.
Victor R. Marshall
Albuquerque, NM

for Amici Curiae San Juan Agricultural Water Users Association, the Hammond
Conservancy District, and the Acequia Landowners Association of the Lower
Rio Grande

Christopher D. Shaw, Special Assistant Attorney General
Tanya M. Trujillo, Special Assistant Attorney General
Santa Fe, NM

for Amicus Curiae New Mexico Interstate Stream Commission

**OPINION**

**BUSTAMANTE, Judge.**

**{1}** We are presented in this case with a challenge to the validity of 19.25.13.27 NMAC (12/30/2004) and 19.25.13.30 NMAC (12/30/2004) of the Active Water Resource Management (AWRM) Regulations promulgated by the State Engineer. The dispute centers on aspects of the regulations that contemplate the administration of water rights through the determination and enforcement of priority. The district court overturned portions of the two regulations at issue because it found that they impermissibly expanded the scope of the State Engineer's statutory authority and violated due process protections. We hold that 19.25.13.27 NMAC, the regulation addressing the State Engineer's determination and enforcement of priority, in part exceeds the scope of authority delegated by the Legislature to the State Engineer and offends principles of separation of powers. To the extent the district court held that the application of the regulation must be limited to court adjudication decrees and licenses issued by the State Engineer, we agree. However, we disagree with the district court to the extent it held that application of the regulation may rest on subfile orders or offers of judgment. We do not address 19.25.13.30 NMAC. We therefore affirm in part and reverse in part.

**BACKGROUND**

**{2}** In 2003, the Legislature enacted NMSA 1978, Section 72-2-9.1(A)-(B) (2003), which provides, in pertinent part:

3

A.     The [L]egislature recognizes that the adjudication process is slow, the need for water administration is urgent, compliance with interstate compacts is imperative and the [S]tate [E]ngineer has authority to administer water allocations in accordance with the water right priorities recorded with or declared or otherwise available to the [S]tate [E]ngineer.

B.     The [S]tate [E]ngineer shall adopt rules for priority administration to ensure that authority is exercised:

(1)     so as not to interfere with a future or pending adjudication;

(2)     so as to create no impairment of water rights, other than what is required to enforce priorities; and

(3)     so as to create no increased depletions.

The State Engineer promulgated the AWRM regulations in response to the enactment of Section 72-2-9.1. The Middle Rio Grande Conservancy District and Appellees Tri-State Generation and Transmission Association, Inc. and New Mexico Mining Association immediately challenged the new regulations. Following extensive briefing and oral argument, the district court struck down portions of the AWRM regulations. The district court concluded in pertinent part:

[T]his Court reverses the State Engineer's Order No. 154, adopting the Active Water Resource Management regulations in violation of his statutory authority and the New Mexico and U.S. Constitutions, to the following extent:

(1)     19 NMAC 25.13.27's list of the hierarchy of evidence for administrable water rights violates N.M. Const. art. III, § 1, other than A. a partial final decree or final decree; B. a subfile order in an adjudication; C. an offer of judgment confirmed by the court in a water rights adjudication; and E. a license issued by the State Engineer.

The State Engineer appeals.

{3}     The AWRM regulations are designed to enable the State Engineer to administer water right priorities by curtailing "junior" water rights, or rights established later in time, when water shortages threaten senior appropriators. *See* 19.25.13.6 NMAC (12/30/2004), 19.25.13.24 NMAC (12/30/2004), 19.25.13.27 NMAC. The regulations (1) direct the State Engineer to determine the elements of water rights, including priority, in the course of administrative proceedings, and to set an "administration date" delineating which water

4

rights are "out-of-priority" and must cease diversion; and (2) define enforcement mechanisms that enable water masters to curtail the use of "out-of-priority" water rights. 19.25.13.7(C)(3)(c) NMAC (12/30/2004); 19.25.13.16 NMAC (12/30/2004); 19.25.13.17 NMAC (12/30/2004); 19.25.13.27 NMAC; 19.25.13.29 NMAC (12/30/2004). The regulations further outline a procedure for publication of the list of water rights and associated priorities, informal presentation of evidence by claimants to the State Engineer, formal hearings on objections, and ultimately appeals. 19.25.13.27, 19.25.13.30 NMAC.

**{4}** Administrative Code 19.25.13.27 describes the process the State Engineer must follow when determining priority.

> The water master district manager for each water master district will define each administrable water right by its elements as set forth in Subsections A through G below. In all instances where the [S]tate [E]ngineer makes determinations of priority based on best available evidence as set forth in Subsections A through G below, he shall publish a list of his determination of the water rights in the water master district for review and provide opportunity to affected water right owners to informally present evidence. The [S]tate [E]ngineer shall hear objections to the water master district manager's determination of an administrable water right in accordance with [NMSA 1978, Section 72-2-16 (1973)]. Filing of an objection to the water master district manager's determination of an administrable water right will not stay the [S]tate [E]ngineer's administration based upon that determination, pending resolution of the objection. Appeals from decisions of the [S]tate [E]ngineer shall be in accordance with [NMSA 1978, Section 72-7-1 (1971)]. The water master district manager for each water master district will define each administrable water right by its elements as set forth in:

> A. a partial final decree or a final decree entered by an adjudication court of competent jurisdiction, subject to any [S]tate [E]ngineer permit issued subsequent to entry of said adjudication decree; or, if no decree has been entered, then;

> B. a subfile order entered by an adjudication court of competent jurisdiction; or, if no subfile order has been entered, then;

> C. an offer of judgment signed by the defendant in a water rights adjudication; or, if no offer of judgment has been signed, then;

> D. a hydrographic survey conducted and filed in accordance with [NMSA 1978, Section 72-4-17 (1965) or NMSA 1978, Section 72-4-16 (1919)]; or, if no hydrographic survey has been filed, then;

E.      a license issued by the [S]tate [E]ngineer; or, if no license has been issued, then[;]

F.      a permit issued by the [S]tate [E]ngineer, accompanied by proof of actual beneficial use; and

G.      a determination made by the [S]tate [E]ngineer based on the best available evidence, consisting of, where available, any filings with the office of the [S]tate [E]ngineer, field or documentary evidence of beneficial use associated with the right including historical aerial photography, diversions records of historical diversions, historical studies containing evidence regarding water use, and data regarding irrigation and water delivery system requirements.

*Id.* Administrative Code 19.25.13.30 outlines the procedures by which objections may be heard and appeals undertaken with respect to priority administration:

Owners of administrable water rights are encouraged to resolve objections to the [S]tate [E]ngineer's determination of an administration date informally with the [S]tate [E]ngineer's district office.  If such informal negotiations fail, the [S]tate [E]ngineer shall hear objections to his determination of an administration date in accordance with Section 72-2-16 NMSA.  Filing of an objection to an administration date will not stay the [S]tate [E]ngineer's administration by administration date, pending resolution of the objection. Appeals from decisions of the [S]tate [E]ngineer shall be in accordance with Section 72-7-1[.]

**STANDARD OF REVIEW**

**{5}**      The issues on appeal concern the extent of the authority that the Legislature delegated to the State Engineer, as well as the constitutional validity of 19.25.13.27 NMAC in light of separation of powers concerns.  Because these issues present questions of law, we apply the standard of de novo review.  *See N.M. Indus. Energy Consumers v. N.M. Pub. Regulation Comm'n*, 2007-NMSC-053, ¶ 19, 142 N.M. 533, 168 P.3d 105 ("Statutory interpretation is an issue of law, which we review de novo."); *N.M. Bd. of Veterinary Med. v. Riegger*, 2007-NMSC-044, ¶ 27, 142 N.M. 248, 164 P.3d 947 ("We review questions of constitutional law and constitutional rights . . . de novo.").

**SEPARATION OF POWERS**

**{6}**      In making their separation of powers arguments, the parties debate at length whether the determination of the elements of water rights is fundamentally a judicial function, such that the Legislature would be barred from any delegation to the State Engineer in this realm. However, we do not consider this issue to be determinative.  The New Mexico Constitution

contains nothing to indicate that determination of the elements of water rights is consigned exclusively to the judicial branch; it merely provides for de novo review. *See* N.M. Const. art. XVI, § 5 (providing for de novo review in appeals from rulings of state executive officers or bodies in matters pertaining to water rights). Nor do basic principles of separation of powers prohibit administrative agencies from engaging in the processes of making factual and legal determinations respecting the rights of individuals. *See Wylie Corp. v. Mowrer*, 104 N.M. 751, 752-53, 726 P.2d 1381, 1382-83 (1986) (upholding the creation of an administrative agency to address individual rights and striking down prior authority prohibiting administrative agencies from engaging in activities nominally denominated "judicial" or "quasi-judicial" in nature); *see also AA Oilfield Serv., Inc. v. N.M. State Corp. Comm'n*, 118 N.M. 273, 279, 881 P.2d 18, 24 (1994) ("This Court has recognized that administrative agencies . . . may exercise 'quasi-judicial' powers."). Rather, the separation of powers issue that concerns us is the nature and reach of the legislative authority which the State Engineer argues permits him to adopt the AWRM regulations at issue in this case.

**Scope of Authority Delegated to the State Engineer by the Legislature**

**{7}**     As we have stated, we must determine whether the State Engineer acted within the scope of authority granted by the Legislature. "Agencies are created by statute[s] and limited to the power and authority expressly granted or necessarily implied by those statutes." *Qwest Corp. v. N.M. Pub. Regulation Comm'n*, 2006-NMSC-042, ¶ 20, 140 N.M. 440, 143 P.3d 478. If an agency acts beyond its legislative authority, it infringes upon the Legislature's role in violation of the separation of powers principles of Article III, Section 1 of the New Mexico Constitution. *State ex rel. Sandel v. N.M. Pub. Util. Comm'n*, 1999-NMSC-019, ¶¶ 11, 30, 127 N.M. 272, 980 P.2d 55 (holding that the Public Utility Commission's deregulation of part of the electric power industry was inconsistent with its statutory authority and thus intruded on the province of the Legislature in violation of Article III, Section 1 of the New Mexico Constitution). Accordingly, we look to the enabling statutes to determine the scope of authority the Legislature granted the State Engineer.

**{8}**     NMSA 1978, Section 72-2-1 (1982) is the principal enabling provision that establishes the office of the State Engineer and specifies that the State Engineer "has general supervision of waters of the state and of the measurement, appropriation, distribution thereof and such other duties as required." NMSA 1978, Section 72-2-9 (1907) further specifies that the State Engineer may supervise "the apportionment of water in this state according to the licenses issued by him and his predecessors and the adjudications of the courts." NMSA 1978, Section 72-2-8 (1967) grants the State Engineer the ability to adopt regulations implementing and enforcing laws in the Water Code.

**{9}**     Other statutory provisions grant the State Engineer the power to grant permits and licenses. *See* NMSA 1978, §§ 72-5-1 (1941), 72-5-6 (1985), 72-5-13 (1907). Generally, all prospective water users must apply to the State Engineer to appropriate water, and the State Engineer is required to determine whether unappropriated water is available. Sections 72-5-

1, -6. *But see* NMSA 1978, § 72-12-1.1, -1.2, -1.3 (2003) (creating exception for permits for domestic use wells, livestock wells and temporary uses). The State Engineer must further evaluate applications to ensure that the proposed use will not impair existing rights, is not contrary to conservation of water within the state, and is not detrimental to the public welfare. Section 72-5-6; NMSA 1978, § 72-5-7 (1985). The State Engineer also has the authority to grant water right applications subject to conditions to avoid detriment to existing rights or the public welfare. Section 72-5-6.

**{10}** The statutes further grant the State Engineer authority over established water rights. Claimants seeking to transfer the purpose or place of use of their water rights are required to seek formal approval from the State Engineer, who must evaluate the application to determine whether the change will impair existing rights. *See* NMSA 1978, §§ 72-5-23, -24; 72-12-7 (1985). The State Engineer may also initiate forfeiture proceedings based upon an independent determination of nonuse. NMSA 1978, § 72-5-28 (1997) (amended 2002).

**{11}** As demonstrated by these statutory provisions, the Water Code provides the State Engineer with some authority to administer the appropriation and uses of water within the state. To be sure, this statutory authority enables the State Engineer to determine certain elements of water rights as part of this supervision. *See, e.g.*, 19.26.2.7(EE) NMAC (1/31/2005) (defining in the rules and regulations governing the appropriation and use of surface waters "[w]ater right" as the "legal right to appropriate water for a specific beneficial use" and stating that the "elements of a water right generally include owner, point of diversion, place of use, purpose of use, priority date, amount of water, periods of use, and any other element necessary to describe the right").

**{12}** Additionally, permits and licenses by necessity identify usage elements. *See, e.g.*, NMSA 1978, §§ 72-5-18 (1969) (amended 2007), 72-12-3(E) (2001); 72-5-1, -6, -7, -13. They also incorporate a priority date. *See* NMSA 1978, § 72-5-3 (1941). The licensing, permitting, transfer, and forfeiture statutes also, as we have stated, require the State Engineer to evaluate factors such as beneficial use, availability of unappropriated water, and impairment of existing rights.

**{13}** In order to evaluate beneficial use, the State Engineer must assess the quantity, place of use, and purpose to which water has actually been applied. *See State ex rel. Martinez v. McDermett*, 120 N.M. 327, 330, 901 P.2d 745, 748 (Ct. App. 1995) ("Beneficial use has been defined as the use of such water as may be necessary for some useful and beneficial purpose in connection with the land from which it is taken. The concept requires actual use for some purpose that is socially accepted as beneficial." (internal quotation marks and citation omitted)). In order to evaluate the availability of unappropriated water, the State Engineer must assess both the total amount of water available within a stream system and all prior appropriations to determine whether there is any residual amount. *See Templeton v. Pecos Valley Artesian Conservancy Dist.*, 65 N.M. 59, 69, 332 P.2d 465, 471 (1958) (observing with respect to permit issuance that "the State Engineer has to consider all prior appropriations to determine whether or not there are any unappropriated waters"). In order

to evaluate impairment of existing rights, the State Engineer must assess whether the contemplated action will have an adverse effect on any prior appropriation. *See Montgomery v. Lomos Altos, Inc.*, 2007-NMSC-002, ¶ 31, 141 N.M. 21, 150 P.3d 971 (filed 2006) ("For the impairment analysis, the State Engineer must either include the total amount of water rights . . . or formally extinguish them."). Evaluating available water, prior appropriations, and any adverse effect of contemplated actions necessarily requires the State Engineer to consider the relationship of the rights of individual water users.

**{14}** Finally, in the context of the State Engineer's supervision of the uses of water, the State Engineer may deny an application or impose conditions when granting it in order to protect existing uses, including junior rights. *See City of Roswell v. Berry*, 80 N.M. 110, 112, 452 P.2d 179, 181 (1969); *see also City of Albuquerque v. Reynolds*, 71 N.M. 428, 439, 379 P.2d 73, 81 (1962) (reiterating the State Engineer's "power and duty to . . . deny the applications in toto if necessary to protect existing rights"). Under the doctrine recognized in *Templeton* that a senior surface appropriator may access underground waters that were the source of the surface water supply before being intercepted by junior users, our Supreme Court noted that the new point of diversion could not impair the rights of these other users. 65 N.M. at 67-68, 332 P.2d at 470-71; *see Herrington v. State ex rel. Office of State Eng'r*, 2006-NMSC-014, ¶ 11, 139 N.M. 368, 133 P.3d 258 ("Although the New Mexico prior appropriation doctrine theoretically does not allow for sharing of water shortages, the *Templeton* doctrine permits both the aggrieved senior surface appropriator and the junior to divert their full share of water." (footnote omitted)).

**Legislative Authority to Promulgate the Regulations**

**{15}** The State Engineer contends that this historical administration of the appropriation and uses of water is consistent with the priority administration contained in the AWRM regulations. He specifically argues that the Legislature has merely re-directed his power in Section 72-2-9.1, such that although his exercise of the power under the AWRM regulations may be different in application, it is not different in kind. We agree only in a limited way.

**{16}** "The primary purpose of statutory construction is to discern and give effect to the intent of the [L]egislature." *Medina v. Berg Constr., Inc.*, 1996-NMCA-087, ¶ 26, 122 N.M. 350, 924 P.2d 1362. "We do so by first looking to the statute's plain language and giving effect to the plain meaning of the words therein." *Cook v. Anding*, 2008-NMSC-035, ¶ 7, 144 N.M. 400, 188 P.3d 1151. We also examine "the history of the statute and the object and purpose the Legislature sought to accomplish." *Maes v. Audubon Indem. Ins. Group*, 2007-NMSC-046, ¶ 11, 142 N.M. 235, 164 P.3d 934. We will not construe a statute in a manner that will render the statute's application absurd or unreasonable or will lead to injustice or contradiction. *Id.*

**{17}** We begin our analysis of the legislative intent of Section 72-2-9.1 by looking at the Legislature's language. *See Cook*, 2008-NMSC-035, ¶ 7. Section 72-2-9.1(B) requires the State Engineer to adopt rules for priority administration. The legislative language does not

specify the scope of such rules. In Section 72-2-9.1(A), the Legislature recognizes the urgent need for water administration and specifically states that the State Engineer "has authority to administer water allocations in accordance with the water right priorities recorded with or declared or otherwise available to the [S]tate [E]ngineer." This statement purports to recite the authority of the State Engineer; it does not grant additional authority. From the plain language of this statement, we infer that the Legislature believed that the State Engineer already had the necessary authority to adopt rules to administer water right priorities in accordance with the Legislature's intent in enacting Section 72-2-9.1 and that, as a result, the Legislature did not need to expand upon the State Engineer's authority in order to accomplish its purpose.

**{18}** As established above, the Legislature has granted the State Engineer the authority to determine the elements of water rights pertaining to appropriation and use in connection with licenses, permits, transfers, and forfeiture. Further, Section 72-2-9 authorizes the State Engineer to supervise "the apportionment of water in this [S]tate according to the licenses issued by him and his predecessors and the adjudications of the courts." The AWRM regulations direct the State Engineer to determine priorities of water rights for the purpose of curtailing certain rights in the event of a shortage relying not only upon the adjudications of the courts and licenses issued by him, but also upon other evidence available to him, such as subfile orders entered by an adjudication court, offers of judgment, permits issued by the State Engineer, or evidence resulting from a hydrographic survey. 19.25.13.27 NMAC. None of the statutory provisions discussed above, nor any published decision addressing them, suggests that the State Engineer has authority to engage in an *inter se* process or to determine priorities for the purpose of curtailing rights from evidence other than adjudication decrees or licenses.[1]

**{19}** Historically, the Water Code has provided for the determination of priorities through a comprehensive system of adjudication in the courts and through licenses. The adjudication process entails the "determination of all rights to the use" of waters within a specified stream system, NMSA 1978, § 72-4-15 (1907), through the joinder of all parties in a single action, Section 72-4-17, culminating in the filing of a decree establishing the "priority, amount, purpose, periods and place of use" of the water rights of each party, NMSA 1978, § 72-4-19 (1907). Licenses are issued in the final stage of the water right permitting process, which involves an initial application to the State Engineer, publication of the application, a protest period, evaluation by the State Engineer, an administrative hearing, and an appeals process to the courts. *See* 72-5-1, NMSA 1978, §§ 72-5-4 (1907) (amended 2001), -5 (1985), -6, -13, -31 (1909); §§ 72-2-16, 72-7-1, 72-12-3.

---

[1]Because it is not before us, we do not address or express any opinion as to whether or how our opinion may affect domestic well rights.

10

**{20}** Although the Legislature expressed its frustration with the speed with which adjudications proceed, and required the State Engineer to adopt rules, the Legislature did not broaden the State Engineer's authority regarding priority administration beyond its existing scope, as described in Section 72-2-9. As a result, the State Engineer's authority to adopt regulations remains limited to the State Engineer's existing authority. *Cf. Sandel*, 1999-NMSC-019, ¶ 30 (holding that the New Mexico Public Utility Commission's deregulation of part of the electric power industry was inconsistent with its existing authority and therefore improperly infringed upon the Legislature's authority).

**{21}** With regard to the State Engineer's authority to engage in priority administration, the parties have relied heavily on language in *State ex rel. Reynolds v. Pecos Valley Artesian Conservancy District (PVACD)*, 99 N.M. 699, 663 P.2d 358 (1983). In that case, our Supreme Court authorized the district court in the course of a formal adjudication to modify the usual adjudication procedure to allow an *inter se* process to proceed concurrently with the ongoing determination of individual water rights. *Id.* at 700-01, 663 P.2d at 359-60. The purpose of the expedited procedure was to enable priority administration, and the Court approved the procedure because due process was properly afforded. *Id.* at 701, 663 P.2d at 360. The Court nevertheless stressed that "there can be no administration of junior rights as against senior rights until the parties have had an opportunity to contest priorities *inter se*." *Id.*; *see State ex rel. Reynolds v. Sharp*, 66 N.M. 192, 196-97, 344 P.2d 943, 945-46 (1959) (stating that although no decree declaring the elements of water rights can be entered until after a "hearing to determine the relative rights of the parties, one toward the other," the court could bind an owner of water rights before the determination of priorities if there is "substantial compliance with the requirements of the adjudication statutes"). We acknowledge that our Supreme Court's statements in *PVACD* addressed the question of an expedited *inter se* process in the context of a formal adjudication proceeding and were not directed to the specific issue that is before us in this appeal. 99 N.M. at 700-01, 663 P.2d at 359-60. We read them, however, as emphasizing the essential nature of a priority determination as among owners of water rights before the curtailment of rights.

**{22}** The Legislature also granted the State Engineer the authority to administer rights based upon licenses, and the licensing process likewise incorporates essential elements of due process. *See, e.g.*, § 72-5-13. Prior to issuance of a license, a permit application is published and protests to the application are reviewed by the State Engineer. Sections 72-5-4, -5, -6; 72-12-3. Although licenses are not commensurate with adjudication decrees, and license rights are still subject to adjudication—*see* NMSA 1978, §§ 72-4-13 (1982), -15—licenses and post *inter se* adjudication decrees can be distinguished from the other forms of evidence enumerated in 19.25.13.27 NMAC. Both result from a process that incorporated procedures to allow parties to object and to be afforded the opportunity for a full hearing *prior to* administration. This process is consistent with the intent expressed in the original water code of 1907. Although water masters were given the responsibility of apportioning water in the state, that responsibility could only be exercised *after* water rights had been fully determined. *See* 1907 N.M. Laws, ch. 49, § 14 (current version at NMSA 1978, Section 72-3-2 (1907) (amended 2007)) ("The water master shall have immediate

11

charge of the apportionment of waters in his district under the general supervision of the territorial engineer, and he shall so appropriate, regulate and control the waters of the district as will prevent waste."); 1907 N.M. Laws, ch. 49, § 58 ("No water master shall be appointed under this act, *until the prior rights to the use of water have been determined* in one or more stream systems in this Territory under the provisions of this act.") (emphasis added) (repealed by 1941 N.M. Laws, ch. 126, § 28).

{23} In contrast, the other forms of evidence enumerated in the regulations, including subfile orders and offers of judgment issued prior to *inter se* proceedings, hydrographic surveys, and permits, have not been subject to general review and objection by others. Although the regulations do provide for an objection and appeals process, this process appears limited to the owner of the administrable water right, and "[f]iling of an objection to an administration date will not stay the [S]tate [E]ngineer's administration by administration date." 19.25.13.30 NMAC; *see* 19.25.13.27 NMAC ("Filing of an objection to the water master district manager's determination of an administrable water right will not stay the [S]tate [E]ngineer's administration based upon that determination[.]").

{24} The State Engineer argues that *PVACD* is not relevant to our analysis because at the time *PVACD* was decided, the Legislature had not directed the State Engineer to perform interim priority administration as it has done in Section 72-2-9.1. We agree and note that this argument underscores the point that prior to the enactment of Section 72-2-9.1, the State Engineer did not have the statutory authority to act in the manner set forth in the AWRM regulations.

{25} The State Engineer additionally points to certain language contained in *State ex rel. Office of State Eng'r v. Lewis*, 2007-NMCA-008, 141 N.M. 1, 150 P.3d 375 (filed 2006), as authority for the promulgation of the challenged regulations. Specifically, in *Lewis*, this Court noted that "the water resource management approach" is consistent with the adjudicatory authority of the courts. *Id.* ¶ 57. But the type of administrative activity contemplated by the regulations at issue in this case is entirely distinct from the court-approved negotiated settlement approach addressed in *Lewis*. The State Engineer focuses on a statement in *Lewis* and argues that Section 72-2-9.1 is designed "for the State Engineer to address in certain specified ways the urgent need for water administration outside of the adjudication process." *Lewis*, 2007-NMCA-008, ¶ 58. However, this statement says nothing about the State Engineer's authority to determine priorities. And, as a whole, *Lewis* confirms the courts' broad authority to resolve water right disputes through the adjudicatory process, rather than any pre-Section 72-2-9.1 authority on the part of the State Engineer to determine priorities. We are unpersuaded that *Lewis* establishes any precedent for the State Engineer's position.

{26} We thus reach the conclusion that, based upon the statutory language and the historical authority of the State Engineer, the Legislature did not intend Section 72-2-9.1 to provide the State Engineer with the additional power of determining water right priorities as among water rights owners and to curtail water usage based upon such administrative

determinations. *See El Paso & R. I. Ry. Co. v. Dist. Court of Fifth Judicial Dist.*, 36 N.M. 94, 101, 8 P.2d 1064, 1068 (1931) ("This [C]ourt has always recognized that the jurisdiction of the [S]tate [E]ngineer to control and administer appropriation and use is no broader than as expressed in or necessarily to be inferred from the statute."). By enacting Section 72-2-9.1, the Legislature indicated its desire that priority administration not be left entirely to the State Engineer's discretion under Section 72-2-8; and it required the State Engineer to take action to address priority administration. However, Section 72-2-9.1 did not expressly authorize the State Engineer to make such determinations beyond adjudication decrees and licenses necessary to carry out the AWRM regulations.

**{27}** Read in isolation, Section 72-2-1 might seem to include this authority. However, when read in the context of the Water Code, and in particular with Section 72-2-9, it does not. Section 72-2-1 states the State Engineer's general supervisory authority; section 72-2-9 is specific as to the authority addressed by the Legislature in Section 72-2-9.1 and restricts the State Engineer's general supervisory authority to apportion the waters of the state to licenses and court adjudications. If we were to give effect to Section 72-2-1 at the expense of Section 72-2-9, we would not be reading the two sections harmoniously and would render Section 72-2-9 meaningless. *See State v. Wilson*, 2010-NMCA-018, ¶ 9, 147 N.M. 706, 228 P.3d 490 (filed 2009) ("[S]tatute[s] must be read as a whole, construing each section so as to produce a harmonious whole."), *cert. denied*, 2010-NMCERT-001, 147 N.M. 673, 227 P.3d 1055; *City of Deming v. Deming Firefighters Local 4521*, 2007-NMCA-069, ¶ 23, 141 N.M. 686, 160 P.3d 595 ("We . . . do not give effect to legislative intent by reading a statute in a way that would render it meaningless."). As a result, we disagree with the State Engineer's argument that Section 72-2-1 has always given his office the broad longstanding authority to apportion waters in this state beyond the limitation of licenses and court adjudications identified in Section 72-2-9.

**{28}** Based upon the scope of the task involved, the existing adjudication statutes, and case law limiting the State Engineer's authority to administer priorities until after adjudication, had the Legislature wished to grant the State Engineer such authority for determining priorities, it would have done so in direct, clear, and certain terms, rather than merely directing the State Engineer to adopt regulations consistent with the State Engineer's existing authority. *See City of Roswell v. Smith*, 2006-NMCA-040, ¶ 12, 139 N.M. 381, 133 P.3d 271 (stating that if the Legislature had wished to include additional language in a statute, it could have done so); *see also In re Petition of PNM Gas Servs.*, 2000-NMSC-012, ¶ 73, 129 N.M. 1, 1 P.3d 383 (presuming that the Legislature is aware of existing law, including agency rules); *Sims v. Sims*, 1996-NMSC-078, ¶ 24, 122 N.M. 618, 930 P.2d 153 (presuming that the Legislature is well informed about existing common law when they enacted a statute).

**{29}** This gap between the Legislature's grant of authority to the State Engineer and the State Engineer's adoption of the AWRM regulations presents a separation of powers problem under Article III, Section 1 of the New Mexico Constitution. An administrative agency infringes upon the separate powers of the Legislature if it exceeds its statutory

13

authority and case law when adopting regulations. *Sandel*, 1999-NMSC-019, ¶ 12. The district court specifically referenced this problem in connection with "the hierarchy of evidence for determining priorities" in 19.25.13.27 NMAC. According to the district court, this AWRM regulation was flawed to the extent that it allowed the State Engineer to consider forms of evidence beyond those already allowed under existing statutes. Thus, the district court concluded that the State Engineer had the statutory authority to consider decrees, subfile orders, and offers of judgment of a water right adjudication court, as well as the State Engineer's issued licenses, as contemplated by 19.25.13.27(A), (B), (C), (E) NMAC.

**{30}** We clarify that the State Engineer has the statutory authority to consider adjudication decrees and its own licenses, but not subfile orders or offers of judgment filed in an adjudication. Nor does the State Engineer have the authority to consider hydrographic surveys or permits as contemplated by 19.13.25.27(D) and (F) (NMAC). Because the Legislature did not expand upon the State Engineer's authority when enacting Section 72-2-9.1, the State Engineer exceeded his authority by promulgating 19.25.13.27 NMAC, permitting him to determine priorities using other forms of evidence for the purpose of curtailment of rights.

**{31}** We again emphasize that our holding does not mean that the Legislature does not have the authority to grant the State Engineer the ability to promulgate regulations such as those at issue. The Legislature created the existing system in which priority administration as contemplated by the AWRM regulations follows the opportunity for *inter se* contest. The Legislature may change the system. Because the Legislature did not expand upon the State Engineer's existing authority, the State Engineer infringed upon the Legislature's prerogative by making such a unilateral change by administrative regulations.

**{32}** In the foregoing analysis, we have inferred from the Legislature's language that it intended the State Engineer to adopt rules for priority administration based on the State Engineer's existing authority to administer water allocations, and we have concluded that paragraphs (B), (C), (D), and (F) of 19.25.13.27 NMAC exceed that existing authority. We now consider whether the Legislature's mistaken expression of the State Engineer's historic authority can overcome the effect of its specific language.

**{33}** The issue centers on the legislative statement in Section 72-2-9.1(A) that "the [S]tate [E]ngineer has authority to administer water allocations in accordance with the water right priorities recorded with or declared or otherwise available to the [S]tate [E]ngineer." We note that this statement is not one of fact, but rather, is a conclusion as to the state of the law regarding the State Engineer's authority. *See Ryan v. Gonzales*, 114 N.M. 346, 348, 838 P.2d 963, 965 (1992) (stating that the Supreme Court will accord strong deference to legislative findings but must nevertheless rule on issues of constitutionality). As we have discussed, this statement is the premise for the State Engineer's adoption of 19.25.13.27 NMAC. Yet, as we have concluded, this language does not correctly express the existing law.

14

**{34}** As a consequence, we perceive a statutory flaw that undercuts the validity of 19.25.13.27 NMAC. If the Legislature intended that the State Engineer expedite priority administration by adopting rules such as those set forth in 19.25.13.27 NMAC because it believed that it had already conveyed such authority to the State Engineer, or that the State Engineer otherwise had such authority under existing law, it acted on a faulty premise. The Legislature's mistaken recitation of such authority does not grant the authority. *See Whitney v. California*, 274 U.S. 357, 374 (1927) ("[W]here a statute is valid only in case certain conditions exist, the enactment of the statute cannot alone establish the facts which are essential to its validity." (Brandeis, J., concurring)), *overruled on other grounds by Brandenburg v. Ohio*, 395 U.S. 444, 449 (1969) (per curiam).

**{35}** Therefore, even if the Legislature had intended that the State Engineer adopt a regulation such as 19.25.13.27 NMAC, the Legislature did not provide the statutory framework for the State Engineer to do so, and the regulation unconstitutionally exceeds the State Engineer's authority. The authority of an administrative body to enact regulations extends not only to the powers expressly provided by the Legislature, but also to those that can be fairly implied from such powers, *Redman v. Bd. of Regents of N.M. Sch. for Visually Handicapped*, 102 N.M. 234, 237, 693 P.2d 1266, 1269 (Ct. App. 1984). But in this case, the Legislature had not previously even impliedly extended the authority reflected in 19.25.13.27 NMAC. We cannot stretch this mistaken legislative assumption into the establishment of an implied grant of power.

**DUE PROCESS**

**{36}** The district court held that portions of the AWRM regulations violate due process protections, premised essentially on principles of procedural due process, focusing on notice, the presentation of evidence, and judicial review. In light of our holding that the Legislature has not granted the State Engineer the authority necessary to administer priorities derived from evidence other than post-*inter se* adjudication decrees and licenses, we consider it speculative to address issues of due process when the regulations not only have not yet been applied but also, based on our holding, will not be applied in their current form.

**CONCLUSION**

**{37}** For the foregoing reasons, we conclude that the State Engineer's regulation contemplating the determination and enforcement of priorities, specifically 19.25.13.27 (B), (C), (D), and (F) NMAC, exceeds the scope of authority delegated by the Legislature and offends principles of separation of powers. We affirm the district court's limitation of 19.25.13.27 NMAC to court adjudication decrees and licenses issued by the State Engineer. We reverse the district court's conclusion that subfile orders and offers of judgment filed in adjudication cases may be considered in the application of 19.25.13.27 NMAC .

**{38}    IT IS SO ORDERED.**

15

**MICHAEL D. BUSTAMANTE, Judge**

**WE CONCUR:**

_____

**CYNTHIA A. FRY, Chief Judge**

_____

**TIMOTHY L. GARCIA, Judge**

**Topic Index for *Tri-State Generation v. D'Antonio*, Docket No. 27,802**

| | |
|---|---|
| **AL** | **ADMINISTRATIVE LAW AND PROCEDURE** |
| AL-AA | Administrative Appeal |
| AL-AL | Administrative Law, General |
| AL-DP | Delegation of Powers |
| AL-DU | Due Process |
| AL-JR | Judicial Review |
| AL-LI | Legislative Intent |
| AL-SR | Standard of Review |
| | |
| **AE** | **APPEAL AND ERROR** |
| AE-SR | Standard of Review |
| | |
| **CT** | **CONSTITUTIONAL LAW** |
| CT-DP | Due Process |
| CT-SP | Separation of Powers |
| | |
| **GV** | **GOVERNMENT** |
| GV-SE | State Engineer |
| | |
| **NR** | **NATURAL RESOURCES** |
| NR-WL | Water Law |
| | |
| **ST** | **STATUTES** |
| ST-IP | Interpretation |
| ST-LI | Legislative Intent |
| ST-RC | Rules of Construction |